## In re Capital Investment, Inc. d/b/a The Dancing Red Whale

[554 A.2d 662]

No. 87-320

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed October 21, 1988

*Jeffrey L. Amestoy, Attorney General, William Griffin, Chief Assistant Attorney General,* and *Marilyn Skoglund, Assistant Attorney General,* Montpelier, for Plaintiff-Appellee.

*Peter M. Flanagan,* Enfield, New Hampshire, for Defendant-Appellant.

**Gibson, J.** The licensee appeals from a decision of the Liquor Control Board (Board) suspending licensee's first- and third-class licenses for a period of fifteen days. We affirm.

I.

Licensee's suspension results from incidents which occurred on the night of February 20-21, 1987. Viewing the evidence in the light most favorable to the prevailing party, see *In re Johnston,* 145 Vt. 318, 320, 488 A.2d 750, 751 (1985), we note the following relevant facts. Licensee operates a dance hall in the town of Hartford, Vermont, and is licensed to sell alcoholic beverages for on-premises consumption. On the evening in question, between 150 and 200 patrons were inside licensee's premises. At approximately 11:45 p.m., a fight broke out between two of the patrons. Licensee's employees quickly restrained the two combatants and removed one of them from the premises. This combatant was taken outside the premises and left without supervision by the licensee, despite the combatant's continued threats against the other patron involved in the fight. Licensee's employees called for assistance from the Hartford Police Department. When the police arrived, they found the combatant fighting with another person outside of the premises, with other individuals also becoming involved in the fray. The officers escorted the combatant from the area, noticing numerous indications of his intoxication.

Meanwhile, inside the premises, a number of patrons who had witnessed the original fight became verbally abusive of the combatant who had remained inside. On the public address system, licensee's manager requested the crowd to quiet down and refrain from any further outbursts. The patrons did not heed this request. One of the licensee's owners then announced that the premises would close, and he instructed the patrons they would have to leave immediately. Numerous patrons were upset by this announcement, particularly those who had recently entered the premises and would not be refunded their cover charge, and those

who were unable to finish drinks or receive refunds for drinks they had recently purchased. More police officers were called in to assist in the evacuation of the premises. The officers observed a number of patrons exhibiting clear signs of intoxication as they departed from the premises. By 12:30 a.m. all the patrons had left the premises.

The Vermont Department of Liquor Control (Department) subsequently brought charges against licensee. Following a hearing, the Board determined that the licensee had violated General Regulations Nos. 19[1] and 41[2] of the Department, and that the appropriate penalty for those violations would be to suspend licensee's liquor licenses for a period of fifteen days. The Board stayed enforcement of its suspension order pending the outcome of licensee's appeal to this Court.

Licensee raises two issues. First, licensee argues that the Board's determination that licensee violated the Board's General Regulation No. 19 is speculative and not supported by the Board's findings of fact. Second, licensee asserts that the Board misconstrued General Regulation No. 41 and that the Board's determination that licensee had violated the regulation is not supported by the evidence.

## II.

In reviewing an administrative agency's determination, we presume the reasonableness and validity of a determination made within the agency's expertise, and require a clear and convincing showing to overcome the presumption. *In re Johnston*, 145 Vt. at 322, 488 A.2d at 752. Factual findings of the Board are binding on the Court unless they are clearly erroneous. *Id.* at 323, 488 A.2d

---

[1] General Regulation No. 19 provides that:
> No alcoholic liquor shall be sold or furnished to a person apparently under the influence of liquor. No alcoholic liquor may be consumed on the licensed premises by any person apparently under the influence of liquor. No person under the influence of alcoholic liquor shall be allowed to loiter on the licensed premises.

[2] General Regulation No. 41 states that:
> It shall be the duty of all licensees to control the conduct of their patrons at all times. No person shall carry or consume alcoholic beverages while dancing. No disturbances, brawls, fighting, unlawful conduct shall be permitted or suffered upon any licensed premises; nor shall such premises be conducted in such a manner as to render said premises or the streets, sidewalks or highways adjacent thereto a public nuisance.

at 753. If there exists any reasonable basis to support the Board's actions, we will not overturn its decision. *Id.* at 322, 488 A.2d at 752.

■ There exists ample evidence to support the Board's conclusion that licensee had permitted one or more patrons to loiter on the premises in an intoxicated state, in violation of General Regulation No. 19. The police officers testified to the obvious intoxication of the combatant outside the premises when they arrived, and that numerous patrons leaving the premises exhibited clear signs that they were under the influence of intoxicating liquor. From this evidence, the Board drew the permissible inference that intoxicated patrons had been allowed to loiter on licensee's premises. "Intoxication may be evidenced circumstantially by prior or subsequent condition of intoxication within such a time that the condition may be supposed to be continuous. . . . This accords with our rule that an inference may be and often is retroactive; a trier [of fact] may from present conditions infer a previous fact." *Ackerman* v. *Kogut*, 117 Vt. 40, 44, 84 A.2d 131, 134 (1951) (citations omitted). The obvious state of intoxication of the combatant and of patrons leaving licensee's premises gives rise to a proper inference that patrons were allowed to loiter on licensee's premises in an intoxicated state.

Licensee attempts to distinguish our opinion in *In re Tweer*, 146 Vt. 36, 398 A.2d 499 (1985), from the facts of this case. Licensee argues that, in the instant case, the Board was only able to conclude that it was likely that one or more unidentified persons exhibited signs of intoxication at an unspecified time, at least ten to twenty minutes before they were observed by the officers. In *Tweer*, the board concluded that an identified person was intoxicated both immediately prior to and immediately following the sale of alcohol. We believe the licensee takes an overly narrow interpretation of our opinion in *Tweer*. The inference drawn by the Board — that one or more patrons were exhibiting signs of intoxication while indoors and prior to the closing of the premises, and wrongfully permitted to loiter there — is a reasonable one, based on the evidence before the Board. Further, the evidence clearly identified at least one individual, the ejected combatant, who, the Board concluded, would have exhibited such symptoms when inside the licensed premises. There has been no clear and convincing showing to overcome the Board's findings, nor is the Board's conclusion inconsistent with its findings of fact.

Although licensee closed the premises, this action was taken only because some of the patrons became unruly and refused to quiet down as a result of licensee's method of handling the confrontation between the two combatants. Therefore, the Board did not err in determining that licensee had violated General Regulation No. 19.

## III.

Licensee also attacks the Board's determination that "licensee had failed to take adequate steps to control the conduct of [the] patrons, thereby 'suffering' disturbances and fighting" in violation of General Regulation No. 41. Licensee asserts that the Board misconstrues the meaning of the term "to suffer." Licensee states that the Board's interpretation implies an absence of will or control, whereas the Board should interpret the term as requiring assent or toleration on the part of the licensee to the proscribed acts. See *Hansmar, Inc.* v. *Illinois Liquor Control Comm'n*, 78 Ill. App. 3d 690, 694, 397 N.E.2d 241, 244 (1979) (mental state contemplated by term "suffer" requires authorization, knowledge, or at least a recklessness in failing to know of the prohibited act).

Absent compelling indications of error, interpretations of administrative regulations or statutes by the agency responsible for their execution will be sustained on appeal. See *In re Agency of Administration*, 141 Vt. 68, 74-75, 444 A.2d 1349, 1351-52 (1982); see also *In re Peel Gallery of Fine Arts*, 149 Vt. 348, 351, 543 A.2d 695, 697 (1988) (administrative agency must consistently apply its own rules so that persons will know how to conduct their affairs). The Board has interpreted the phrase "permitted or suffered" as charging the licensee with the affirmative duty to become aware of and prevent prohibited conduct by its patrons. See, e.g., *In re R.J.T.*, Liquor Control Board Decision, at 13-14 (March 10, 1988); see also *In re D. & L. Robertson, Inc.*, Liquor Control Board Decision, at 6 (Dec. 3, 1987) (licensee failed to take appropriate steps to control the conduct of its patrons; therefore, it permitted or suffered fighting on the licensed premises). The Legislature intended the liquor laws to be liberally construed to protect the public welfare, order and health. See 7 V.S.A. §§ 1, 108; *In re Judy Ann's Inc.*, 143 Vt. 228, 233, 464 A.2d 752, 755 (1983); see also *Verrill* v. *Dewey*, 130 Vt. 627, 630, 299 A.2d 182,

184 (1972) (sale of intoxicating liquors is a privilege subject to the police power of the state due to the social problems inherent in the consumption of alcohol).

The facts of the instant case show that licensee failed to satisfy this affirmative duty. The Board concluded that "licensee should have been able to better control" events on the night in question, stating that this could have been accomplished with more man-power, increased vigilance, and insistence on proper decorum from patrons. In particular, the Board pointed to the fact that licensee deposited one combatant to the original altercation outside the premises, still in a combative mood, without supervision, despite his obvious state of intoxication and his threats of dire harm to the other participant of the fight, who remained inside the premises. When the police arrived, they found the combatant involved in an altercation with another person outside of the premises, with several other persons becoming embroiled in the fray. The Board properly construed General Regulation No. 41 in finding that licensee had permitted or suffered prohibited conduct on its premises, and the evidence supports the Board's conclusion that licensee failed in its affirmative duty to keep the public areas adjacent to the premises from becoming a public nuisance.

*Affirmed.*