2005 VT 51

**In re KACEY'S, INC. d/b/a Kacey's**

[879 A.2d 450]

No. 04-159

¶ 1. May 3, 2005. Licensee appeals from a Liquor Control Board decision revoking its first- and third-class licenses to sell alcoholic beverages for on-premises consumption. Licensee contends the Board abused its discretion by basing the revocations on: (1) illegal drug activity that was not reasonably discoverable; (2) unsupported findings concerning the licensee's reputation; and (3) uncharged conduct and hearsay evidence. We affirm.

¶ 2. Licensee operates a pub, known as Kacey's, in St. Albans, Vermont. Reports of drug activity at the establishment led to an investigation by the Vermont Drug Task Force. The investigation involved the use of undercover police officers, one of whom testified at the hearing before the Board that he bought cocaine from the pub's manager, Perry Paradee, on four separate evenings between July 2002 and January 2003. The officer testified that on each occasion he would enter the pub, locate Paradee, and indicate that he wished to purchase cocaine. The officer would then meet Paradee in the bathroom, and Paradee would hold his foot against the door to prevent others from entering. The officer would then make the purchase, and both would exit. On each occasion, the powder field-tested positive for cocaine, a determination later confirmed by laboratory testing. On one occasion when they entered the bathroom, the officer observed an individual snorting lines of cocaine from the toilet lid.

¶ 3. In addition to the four separate cocaine purchases from Paradee, the officer also recalled that on one occasion he arranged to purchase cocaine from a woman he met at Kacey's, and later completed the purchase in the parking lot of the pub. The officer also recounted an incident in which he asked Paradee for some "weed," and Paradee then approached another patron, who subsequently handed the officer a film canister containing a leafy substance which the officer determined to be marijuana. The officer testified, and the Board found, that these drug transactions, combined with Paradee's freedom of movement in and out of the bar area and kitchen, making of change, and frequent use of the telephone demonstrated that Paradee had essentially "set up shop" to sell drugs at Kacey's. The officer observed other transactions at Kacey's not involving Paradee in which the telephone would ring, an individual would answer and later enter the bathroom with another patron, and the two would then exit in tandem some ten to fifteen seconds later. This behavior suggested to the officer that other drug transactions were regularly occurring on the premises.

¶ 4. Kacey's owner, Kirk Boucher, testified that he typically worked at the pub preparing food or doing paper work from early morning to mid-afternoon. Boucher stated, and the Board found, that he was not on the premises when any of the drug sales occurred. Boucher claimed that he had no knowledge or suspicion of drug trafficking at Kacey's during the events in question. Nevertheless, the Board found that the drug activity described by the undercover officer could have been observed by Boucher or any other "ordinary alert and interested person"; that Boucher could have observed the activity by visiting the premises during the evening hours, and could have taken steps to curtail it; and that by failing to do so Boucher breached his affirmative duty to become aware of, and prevent, prohibited conduct on the premises, in violation of General Regulation No. 41 of the Liquor Control Department, which provides, in part, that "[n]o disturbances, brawls, fighting, unlawful conduct shall be permitted or suffered upon any licensed premises."* The Board concluded that the appropriate penalty for the violation

---

* General Regulation No. 41 provides in its entirety as follows:

It shall be the duty of all licensees to control the conduct of their patrons at all times. No person shall carry or consume alcoholic beverages while dancing. No disturbances, brawls, fighting, unlawful conduct shall be permitted or suffered upon any licensed premises; nor shall such premises be conducted in such a manner as to render said premises or the streets, sidewalks or highway adjacent thereto a public nuisance.

was revocation of licensee's first- and third-class licenses. This appeal followed.

¶ 5. Licensee first contends the Board abused its discretion in determining that it "permitted or suffered" drug trafficking to occur on its premises. Licensee notes Boucher's undisputed testimony that he had no knowledge of the transactions, and argues that he could not, through reasonable diligence, have discovered them because they were by nature "subtle and covert" and "undetectable to an untrained observer." In reviewing the Board's ruling "we presume the reasonableness and validity" of decisions within its expertise "and require a clear and convincing showing to overcome the presumption." *In re Capital Investment, Inc.*, 150 Vt. 478, 480, 554 A.2d 662, 664 (1988). We will not disturb the Board's factual findings unless they are clearly erroneous. *Id.* at 480-81, 554 A.2d at 664. Furthermore, absent compelling indication of error, we will uphold the Board's interpretation of the administrative regulations and statutes within its purview. *Id.* at 482, 554 A.2d at 665. Thus, we have specifically upheld the Board's interpretation of the phrase "permitted or suffered" under Regulation No. 41 "as charging the licensee with the *affirmative duty* to become aware of and prevent prohibited conduct by its patrons." *Id.* (Emphasis supplied.)

¶ 6. The evidence and findings support the Board's conclusion that licensee failed to satisfy this affirmative duty. As noted, the Board found that the drug activities as described by the undercover officers were apparent "to any ordinary alert and interested person," and therefore could have been discovered by Boucher through the exercise of reasonable diligence. In support of this finding, the Board cited the undercover officer's testimony describing the frequently repeated scenario in which, following a telephone call or conversation, two individuals would enter the bathroom to-

gether, stay for ten or fifteen seconds, and then exit at almost the same time. The Board also noted the officer's relative ease in arranging frequent purchases of cocaine and, on one occasion, marijuana from Paradee and other patrons, and the officer's recollection of entering the bathroom and observing an individual snorting cocaine from a toilet lid. These findings are supported by the evidence, and reasonably support the conclusion that Boucher — or any ordinary alert and interested person — could have detected what was happening through the exercise of reasonable diligence.

¶ 7. Licensee also contends that the Board's decision is based on the unreasonable assumption that Boucher should have been present "during all hours of operation" seven days a week. This was not, however, the Board's finding. It found, rather, that Boucher had an affirmative duty to engage in some supervision or inspection during the critical evening hours, and that the illegal drug activities could have reasonably been discovered if Boucher "had been on the premises at least some of the time during the evening hours." These findings and conclusions were reasonable and supported by the evidence, and therefore can not be disturbed on appeal. *Id.* at 481, 554 A.2d at 664 (Board's decision must be upheld "[i]f there exists any reasonable basis to support the Board's actions").

¶ 8. Licensee next contends the Board's decision is based upon unsupported findings that drug trafficking at Kacey's had been occurring for a period of "months or longer" and that Kacey's had developed a "reputation" in the St. Albans area as a place where drugs could be bought and sold. The evidence, however, amply supported the Board's inference that drug dealing had been occurring at Kacey's for a substantial period of time. Furthermore, the Board's carefully qualified finding that Kacey's had developed a reputation for drug dealing —

"not to everyone of course but to those elements of society who are interested" — was a reasonable inference from the relative ease and frequency of the controlled purchases of cocaine by the undercover officer, and the volume of other apparent drug dealing observed by the officer. See *In re Tweer*, 146 Vt. 36, 39, 498 A.2d 499, 501 (1985) (Board's inferential finding must be upheld where the "inference was not clearly erroneous").

¶ 9. Finally, licensee contends the Board relied on improper evidence of three kinds. First, licensee asserts that the Board violated its due process rights by relying on the officer's testimony about other drug transactions that were not specifically alleged in the notice of hearing. The statutory notice provision requires a "short and plain statement of the matters at issue." 3 V.S.A. § 809(b)(4). The test of adequacy is "whether or not the parties were given an adequate opportunity to prepare and respond to the issues raised in the proceeding." *In re Green Mountain Power Corp.*, 131 Vt. 284, 293, 305 A.2d 571, 577 (1973); accord *In re Twenty-Four Vt. Utilities*, 159 Vt. 363, 369, 618 A.2d 1309, 1312-13 (1992). Here, the notice of hearing together with several attached violation reports gave ample notice to licensee of the six separate drug transactions that were alleged and found as violations. *In re Hot Spot, Inc.*, 149 Vt. 538, 540-41, 546 A.2d 799, 801 (1988) (notice requirement satisfied by "narrative report of the alleged facts" set forth in investigator's reports). Although licensee argued below that other drug transactions observed by the officers were not readily detectable by the untrained observer, the record does not show that licensee objected to the testimony on the ground that it was outside the scope of the charges or that licensee was unprepared to respond to the testimony. Accordingly, the issue was not preserved for review on appeal. See *Town of Hinesburg v. Dunkling*, 167 Vt.

514, 523-24, 711 A.2d 1163, 1166 (1998) (objection to constitutional adequacy of notice of violation must be raised below to preserve issue for review on appeal). Nor does licensee demonstrate how, if at all, it was prejudiced by the alleged lack of notice. See *State v. Ingerson*, 2004 VT 36, ¶¶ 4-6, 176 Vt. 428, 852 A.2d 567 (to justify reversal, party must show that he or she did not have actual notice of charges or an adequate opportunity to defend). Accordingly, we find no error warranting reversal of the judgment.

¶ 10. Licensee further contends that the Board erred in finding a violation based on the undercover officer's purchase of cocaine from a patron in Kacey's parking lot. Licensee asserts that the State had withdrawn the allegation, and that it failed to present evidence to support it. The State adduced specific testimony in support of the allegation, however, and at no point offered to withdraw the violation. Finally, licensee contends the Board erred in admitting, over objection, a state trooper's hearsay testimony that state laboratory tests confirmed that the substances purchased by the officers were cocaine. We note, however, that regardless of whether the testimony was admissible under the more "relaxed" rules applicable in administrative proceedings, *In re Desautels Real Estate, Inc.*, 142 Vt. 326, 335, 457 A.2d 1361, 1365 (1982), alternative evidence confirmed the identity of the substance as cocaine, including field tests admitted without objection, and the officer's testimony based on extensive training and experience identifying substances as illegal drugs. See *State v. Defranceaux*, 170 Vt. 561, 562, 743 A.2d 1074, 1075 (1999) (mem.) (court may rely on officer's affidavit identifying illegal substance where it adequately sets forth officer's skill, training and experience). Licensee additionally contends the Board erred in admitting hearsay testimony as to what Paradee told the undercover officer when

the officer asked for drugs. Licensee does not, however, identify the specific statements that were allegedly improperly admitted, nor how they were prejudicial in light of the ample evidence — apart from any hearsay testimony — describing the drug sales from Paradee. See *Paradis v. Kirby*, 138 Vt. 524, 528, 418 A.2d 863, 865 (1980) ("When claims of error are made, it is incumbent upon the claimant to show that he has been prejudiced as a result."). Therefore, we discern no basis to disturb the judgment.

*Affirmed.*