2009 VT 68

## In re Rusty Nail Acquisition, Inc.

[980 A.2d 758]

No. 08-338

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 26, 2009

*Russell D. Barr* and *Daniel A. Seff* of *Barr & Associates, P.C.*, Stowe, for Appellant.

*William H. Sorrell*, Attorney General, and *Jacob A. Humbert*, Assistant Attorney General, Montpelier, for Appellee.

¶ 1. **Burgess, J.** The Rusty Nail, a licensed bar in Stowe, appeals the Liquor Control Board's conclusion that the bar violated

a Board regulation by allowing two intoxicated patrons to loiter on the premises. We affirm.

¶ 2. In February 2008, a team of liquor control investigators carried out an inspection of all licensees on the Stowe Mountain Road, including the Rusty Nail. After observing licensee's dance floor from an upstairs balcony for approximately ten minutes, the team determined that one male patron appeared intoxicated. They based this determination on his aggressive dancing, difficulty standing up, and general unruly behavior.

¶ 3. After watching him for several minutes, members of the team escorted the man from the dance floor and brought him to the attention of the bar's manager. During this interaction, the man's friend approached, and the team observed signs of intoxication from both patrons. The manager indicated that he did not dispute that the two men were intoxicated. The team instructed the manager to see that the two men got a ride home and then left, having concluded their inspection.

¶ 4. The team reported a violation of General Regulation 17 (GR17),[1] which states:

> No alcoholic beverages shall be sold or furnished to a person displaying signs of intoxication from alcoholic beverages or other drugs/substances. No alcoholic beverages may be consumed on the licensed premises by any person displaying such signs of intoxication. No person displaying such signs of intoxication shall be allowed to loiter on the licensed premises.

---

[1] GR17 has been amended, and recodified as General Regulation 18. It now reads:

> No alcoholic beverages shall be sold or furnished to a person displaying signs of intoxication from alcoholic beverages or other drugs/substances. No alcoholic beverages may be consumed on the licensed premises by any person displaying such signs of intoxication. No person displaying such signs of intoxication shall be allowed to *stay* on the licensed premises, except under direct personal supervision by a licensee or his or her employees in a segregated nonpublic area when the patron's immediate departure could be expected to pose a risk of bodily injury to the patron or any other person.

Department of Liquor Control General Regulation 18, 4 Code of Vermont Rules 26 020 016-1 (2009), available at http://liquorcontrol.vermont.gov/enforcement/regulations/regchanges.pdf (emphasis added).

Department of Liquor Control General Regulation 17, 4 Code of Vermont Rules 26 020 016-1 (2005). The matter was referred to the state Liquor Control Board, which administers alcohol service licenses in the state and adjudicates alleged violations of the General Regulations. Licensee was cited for violating the last sentence of GR17, which prohibited allowing intoxicated persons to loiter on the premises, and a contested hearing was held. Licensee disputed the violation on two grounds, contending that the patrons were not intoxicated — or at least not intoxicated enough for licensee's management to have noticed them — and also positing that the GR17 loitering prohibition was void for vagueness. The Board concluded that the meaning of "loiter" in the context of GR17 was clear and unambiguous, thus validating the constitutionality of the regulation, and ruled that it was or should have been apparent that the patrons were intoxicated in violation of the ban on intoxicated loitering in GR17. Licensee appealed.

¶ 5. Licensee makes three arguments on appeal. It asserts, first, that the regulation exceeds the Board's enabling legislation. Second, it contends that GR17 is void for vagueness, both on its face and as applied. Third, it argues that the Board committed reversible error by deciding that the events in question violated the rule's prohibition on drunken loitering. We address each in turn.

## I. Whether the Regulation Exceeds the Board's Enabling Statute

¶ 6. By statute, the Board has the authority to promulgate and enforce regulations relating to the " 'furnishing, purchasing, selling, . . . delivering and possessing of alcohol.' " *In re Club 107*, 152 Vt. 320, 323, 566 A.2d 966, 967 (1989) (quoting 7 V.S.A. § 104(8)); see also 7 V.S.A. § 104(5) (giving the Board authority to make regulations necessary for the execution of its powers and duties). For a regulation to be a permissible exercise of this statutory authority, there must be a "nexus between the regulation . . . and the consequences of excessive use of alcohol." *In re Con-Elec Corp.*, 168 Vt. 576, 576, 716 A.2d 822, 823 (1998) (mem.) (quotation omitted). Thus, the issue here is whether GR17 is connected to, and is therefore a proper exercise of the Board's authority for, regulating the overuse of alcoholic beverages, or if it impermissibly regulates an unrelated activity — namely, mere loitering — that is beyond the Board's authority.

■ ¶ 7. We have stated that Board regulations exceed the Board's Title 7 authority when the regulations force the Board to define and regulate matters over which it has no expertise or authority. In *Club 107*, this Court invalidated a Board regulation that prohibited certain activities it labeled as "obscene, lewd, or indecent entertainment" at licensed establishments because the Board had no expertise or authority to regulate obscenity. 152 Vt. at 323-25, 566 A.2d at 967-69. We struck down the obscenity regulation because we concluded that the Board should not be in the position of defining obscenity in order to enforce its alcohol regulations. *Club 107* emphasized that there must be a nexus between the exercise of the Board's authority and either the consequences of excessive alcohol use, or a specifically granted power of the Board, in order for the exercise of the Board's authority to be valid. *Id.* at 324, 566 A.2d at 968. "[T]he mere coincidence of the sale of liquor and some other activity is not — by itself — sufficient to allow the Board to regulate the other activity." *Id.* Although the Legislature directed that Title 7 " 'is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state, and all of its provisions shall be liberally construed for the accomplishment of the purposes set forth herein,' " we are mindful that "the Board's authority is not unrestrained." *Id.* (quoting 7 V.S.A. § 1).

■ ■ ¶ 8. General Regulation 17, however, is quite different from the obscenity regulation at issue in *Club 107*. Its purpose is not to regulate or prevent loitering per se, but to prevent *intoxicated* persons from loitering in a licensed establishment. Therefore, the Board need not exceed its expertise or authority to enforce the regulation. Instead, the inspectors need only to observe patrons for signs of intoxication, a matter which is clearly within the Board's expertise. When individuals in a licensed establishment exhibit commonly recognized signs of intoxication, and the licensee takes no action to remove them, the licensee is in violation of GR17. Enforcing the regulation, therefore, depends solely upon observing demonstrably intoxicated patrons remaining inside licensed establishments. Because the Board and its inspectors are well-qualified to judge the signs that indicate intoxication, the Board is not required to define anything beyond its area of expertise in order to enforce the regulation.

■ ¶ 9. Furthermore, GR17 does not, as licensee argues, attempt to regulate loitering generally in contravention of the

Board's statutory authority to regulate only intoxicating liquors. In *SBC Enterprises, Inc. v. City of South Burlington Liquor Control Commission*, 166 Vt. 79, 84, 689 A.2d 427, 430 (1996), we overturned a decision by a city's liquor control commission[2] to revoke a club's liquor license, which was conditioned on the club's compliance with all city ordinances, because the commission was not authorized to use its powers to enforce municipal public indecency regulations beyond the immediate realm of controlling alcoholic beverage sales and consumption. Licensee argues that GR17 similarly forces licensed establishments to prevent loitering, which the Legislature has neither prohibited directly nor authorized the Board to prohibit. But this case is distinguishable from *SBC Enterprises* because it does not concern the licensee's failure to enforce collateral ordinances or regulations issued by another governmental entity. The Board cited licensee for violating a Board regulation. Further, under GR17, the Board does not place conditions on licensees forcing them to prohibit loitering generally at their establishments. Instead, the regulation forbids licensees from allowing patrons to loiter when they appear intoxicated, which is well within the power delegated to the Board.

■ ■ ¶ 10. Unlike both *Club 107* and *SBC Enterprises*, where liquor control authorities attempted to regulate matters wholly unconnected to alcohol consumption and beyond the scope of the Board's enabling legislation, the regulation at issue here specifically ties together loitering with the state of intoxication, bringing it squarely within the Board's purview. There is the necessary nexus between the regulation and the consequences of excessive use of alcohol because the regulation prevents licensees from allowing only intoxicated people to idle at their establishments, which are places where intoxicated people may pose a threat to themselves and to public safety. See *In re DLC Corp.*, 167 Vt. 544, 548, 712 A.2d 389, 392 (1998) (pointing out that the State may "permit the manufacture and sale of intoxicating liquor under such conditions as will limit to the utmost its evils" (quotation omitted)). Although GR17 uses the word "loiter," which has a definition

---

[2] In the context of alcoholic beverage regulation, local control commissions are subordinate agencies constituted under the paramount authority of the Liquor Control Board. 7 V.S.A. §§ 166-167; *SBC Enters.*, 166 Vt. at 83, 689 A.2d at 429-30. Thus, while *SBC Enterprises* involves a municipal liquor control commission, it is instructive to the case at bar because commissions operate under, and are bound by, the same laws as the Board.

and connotation unrelated to the consumption of alcohol, the regulation prohibits the licensee from tolerating only intoxicated loitering and so directly relates to the Board's enabling legislation.

■ ¶ 11. We also accept the Board's conclusion that removing intoxicated patrons from a licensed establishment furthers the Board's mandate to facilitate sales of alcoholic beverage in such a manner as to "discourage intoxication and encourage temperance." *In re Club 107*, 152 Vt. at 324, 566 A.2d at 968 (quotation omitted). Removing intoxicated individuals encourages patrons to consume moderately to avoid being ejected, and reduces the likelihood of further consumption by those who appear already intoxicated. It also promotes the general welfare by removing intoxicated persons from the confines of an establishment where they may pose a threat to other people's safety. Further, given the nature of licensed establishments as highly regulated environments, the Board's authority should be construed broadly when applied to regulating the presence of intoxicated persons within such establishments. See 7 V.S.A. § 1. Accordingly, we conclude that GR17 does not exceed the Board's enabling legislation.

## II. Whether GR17 is Void for Vagueness

■ ¶ 12. The second issue is whether the term "loiter" is impermissibly vague in the context of GR17. Ordinarily, this Court upholds the Board's interpretation of its regulations as well as the statutes within its area of expertise, and will reverse only when there is a compelling indication of error. *In re Kacey's, Inc.*, 2005 VT 51, ¶ 5, 178 Vt. 567, 879 A.2d 450 (mem.). However, the regulation's vagueness is a constitutional question based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Trucott*, 145 Vt. 274, 279, 487 A.2d 149, 152 (1984). The Due Process Clause is not an area of the Board's expertise, and consequently, we review this legal issue de novo. Statutes and, by extension, regulations, are unconstitutionally vague when they either (1) fail to provide sufficient notice of what conduct is prohibited, or (2) authorize or encourage arbitrary and discriminatory enforcement by failing to provide explicit standards. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *In re 1650 Cases of Seized Liquor*, 168 Vt. 314, 324, 721 A.2d 100, 107 (1998).

## A. Threshold Issues

¶ 13. We use the same void-for-vagueness test for administrative regulations, such as GR17, as we do for statutes. See *Rogers v. Watson*, 156 Vt. 483, 491-92, 594 A.2d 409, 413-14 (1991) (applying the two-pronged void-for-vagueness test to an Agency of Natural Resources regulation). The vagueness test is "less strict" when applied to a regulation that affects economic interests, not constitutional rights, and when "the [aggrieved party] can seek clarification of its meaning or resort to administrative processes."[3] *Id.* at 491, 594 A.2d at 414; see also *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (stating that "greater leeway" is allowed "[i]n the field of regulatory statutes governing business activities, where the acts limited are in a narrow category").

¶ 14. One of the main reasons for a less strict application of the vagueness doctrine in the context of economic regulations is that the Vermont Administrative Procedure Act (APA) provides regulated entities and the public with multiple opportunities to participate in the rulemaking process. Regulations such as GR17 are developed in agency rulemaking processes governed by the APA, which contains several provisions aimed at allowing members of the public concerned about the effect of a rule on their businesses to comment on and request clarification of regulations. 3 V.S.A. §§ 836, 840(e). These opportunities are available both during the rulemaking process and after a regulation is adopted. Further, the APA requires agencies to respond to requests for rule clarifications with declaratory rulings. *Id.* § 808. Thus, there is no reason for any affected entity to be unclear about a regulation's applicability. Because of these opportunities to request changes and clarification from the agency responsible for making and implementing the regulations, the concern that ordinary people will not be able to understand what conduct is prohibited is greatly tempered in the administrative regulatory context.

---

[3] While licensee is correct that criminal prosecution is possible for a willful violation of Board regulations, 7 V.S.A. § 667(b), licensee was not charged with a willful violation here, and even if it had been, distributing liquor is not constitutionally protected conduct, so we grant some leeway to regulations affecting it. See *Ackerman v. Kogut*, 117 Vt. 40, 47, 84 A.2d 131, 136 (1951) ("traffic in intoxicating liquor is a mere matter of privilege because it is of a character tending to be injurious").

¶ 15. Because these APA provisions are available to all regulated entities "we are unlikely to intervene for persons who had the opportunity to clarify their responsibilities and did not use it." *In re S.M.*, 2003 VT 41, ¶ 15, 175 Vt. 524, 824 A.2d 593 (mem.) (quotation omitted). In this case, instead of using any of the APA procedures, or using the Board's training program that is administered to all licensees, including the employees of the Rusty Nail, to clarify the meaning of GR17, the Rusty Nail waited until it was cited for violating the regulation to challenge its constitutionality. This is similar to the situation in *Rogers*, where the defendants, upon learning that they could not obtain a permit for a septic system, immediately tried to eliminate the need for one. *Rogers*, 156 Vt. at 492, 594 A.2d at 414. In that case, we denied the defendants' vagueness challenge to the applicable regulations, in large part because there was little excuse for uncertainty given the options that were available to those who desired to understand the rule. *Id.* at 491, 594 A.2d at 414; see also *Benning v. State*, 161 Vt. 472, 484, 641 A.2d 757, 763 (1994) (stating that the failure to request clarification of an administrative regulation is fatal to a post-hoc facial vagueness challenge, but nevertheless analyzing the regulation for vagueness). Our cases thus indicate that we approach a vagueness challenge such as the one here with a critical eye.

### B. Whether GR17 Fails to Apprise Citizens of Prohibited Conduct

¶ 16. Licensee alleges that the word "loiter" in GR17 fails to apprise licensed establishments of what particular conduct is prohibited, which, if true, would render it impermissibly vague. *State v. Beauregard*, 2003 VT 3, ¶ 8, 175 Vt. 472, 820 A.2d 183 (mem.). "Loiter" is not defined in the context of GR17, but this does not render it impermissibly vague per se. See *Brody v. Barasch*, 155 Vt. 103, 110-11, 582 A.2d 132, 137 (1990). Statutes or regulations need not "detail each and every act or conduct that is prohibited" in order to provide fair notice of what behavior they cover. *Id.* at 111, 582 A.2d at 137. Rather, "[s]tatutory language that conveys a definite warning as to proscribed conduct when measured by common understanding and practices will satisfy due process." *Id.*

¶ 17. In this case, licensee attempts to isolate the word "loiter" from the context of the entire regulation in which it is used, and

asks us to ignore its admitted understanding of the overall regulation, and instead focus on some alleged uncertainty over the definition of the term. "Loiter" is variously, but commonly, understood to mean linger, tarry, delay, or dawdle. Loitering is often associated with idleness, and it is not lost on this Court, and presumably not to the Board, that patrons can be reasonably expected to spend leisure time in a taproom engaged in no particularly constructive occupation. The gravamen of GR17, however, is not on how customers spend their time in a licensed establishment, but whether the operators allow them to spend time there while intoxicated.

¶ 18. Both the claim of ambiguity, and the need for closer definition, is belied by licensee's own understanding of the rule in this case. The record reveals that licensee's reading of GR17 is entirely consistent with the Board's construction. The Board concluded that GR17 means that "when a licensee has an intoxicated person on the premises who is displaying signs of intoxication they shall not be allowed to remain on the licensed premises." This is essentially the same as the understanding expressed by the bar's manager in his testimony before the Board that "[a]n intoxicated person is not allowed to be in our club." The manager's testimony showed that, practically speaking, GR17 sowed no confusion over drunken loitering, despite the lack of further definition, but rather, prohibited a licensee from allowing an intoxicated person to remain on the licensed premises. Since the licensee's manager articulated the same meaning of the regulation as that expressed by the Board, and fairly appearing in the rule itself, we conclude that GR17 adequately apprised licensee of the conduct prohibited.

## C. Whether GR17 Authorizes or Encourages Arbitrary Enforcement

¶ 19. Due process also requires that GR17 not subject licensees to arbitrary and discriminatory enforcement. Thus, in addition to offering a person of ordinary intelligence a reasonable opportunity to know what is prohibited, regulations must also provide explicit standards for the law enforcement officers who apply them. *Sec'y, Vt. Agency of Natural Res. v. Irish*, 169 Vt. 407, 411, 738 A.2d 571, 575-76 (1999); see also *Papachristou*, 405 U.S. at 168 (emphasizing that the latter requirement prevents law

enforcement officers from exercising unfettered discretion over whom to arrest). Licensee alleges that the loitering language of GR17 violates "the requirement that a legislature establish minimal guidelines to govern law enforcement," *Morales*, 527 U.S. at 60 (quotation omitted), because it offers no time standards for investigators to use in determining when customers are impermissibly being allowed to loiter.

¶ 20. Contrary to licensee's assertions, the regulation does not allow the Board to invoke an amorphous and undefined durational aspect of "loitering," which could create a risk of arbitrary punishment. Again, the regulation is concerned not with loitering patrons, but with intoxicated customers staying on the premises. GR17 specifically requires a patron be intoxicated *and* allowed to remain on the premises before a violation may be found. This plain and unambiguous requirement defines the prohibited conduct with sufficient clarity to prevent arbitrary enforcement. See, e.g., *Yuen v. Mun. Court*, 125 Cal. Rptr. 87, 92 (Ct. App. 1975) (upholding an ordinance prohibiting loitering while carrying a concealed weapon because the requirement of carrying a concealed weapon adequately puts both violators and officers on notice of what conduct is prohibited); *State ex rel. Williams v. City Court*, 520 P.2d 1166, 1170 (Ariz. Ct. App. 1974) (upholding an ordinance prohibiting loitering in a public place for the purpose of begging because loitering was only prohibited when combined with begging, which puts a reasonable person on notice as to exactly what conduct is prohibited).

¶ 21. Furthermore, we agree with the Board that "[t]he condition of noticeable intoxication is specific and clearly demonstrable, and is not unreasonably subject to arbitrary interpretation." Investigators must see patrons showing signs of alcohol impairment, rather than just tarrying, before they can cite a licensee for violating GR17, so licensees are not subject to the whims of the investigators. Since the patron must exhibit signs of intoxication before the licensee can be cited for violating the regulation, the licensee remains capable of preventing a violation through diligent oversight, which is exactly what the regulation encourages.

¶ 22. As licensee points out, at least one other court has found unconstitutional vagueness in a statute similar to the regulation at issue here. In an Oklahoma appellate court decision, a statute that

prohibited a licensee from "permitting any intoxicated person to loiter in or around [licensee's] place of business" was struck down as vague. *Curtis v. Peterson (In re Beverage License # ABL-93-26)*, 899 P.2d 660, 661-62 (Okla. Civ. App. 1995). The court concluded that the statute did not provide a workable standard for determining the point at which "the authorized customer become[s] the unauthorized loiterer." *Id.* at 662. As an initial matter, the case is distinguishable because it involves a vagueness challenge to a statute, not a regulation. As discussed above, we afford regulations greater leeway in a vagueness challenge because the APA provides numerous opportunities for interested parties to clarify the meaning of regulations. We further disagree with the Oklahoma court's decision because we read the language, meaning, and intent of GR17 as sufficiently clear and specific enough to prevent arbitrary enforcement. Authorized customers become unauthorized loiterers for the purposes of GR17 when they show outward signs of intoxication. This is an acceptable standard for investigators to apply, and one upon which licensees may rely in order to conduct their business without violating GR17.

¶ 23. Licensee also contends that GR17 is unconstitutionally vague as applied. Generally, a party who has clearly violated a statute or regulation that is not facially vague cannot challenge it for vagueness unless fundamental rights are implicated. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). In this case, the facts show that licensee clearly violated GR17. The inspection team allowed the management more than ten minutes to remove the intoxicated patron before intervening. Allowing an obviously intoxicated person to remain on regulated premises for ten minutes is a violation of the Board's application, and the licensee's understanding, of the regulation. Therefore, licensee cannot argue that it was not given enough time to remove the intoxicated patrons before the team took action.

¶ 24. Likewise, licensee's argument that a patron engaging in any activity, such as dancing or playing pool, is not loitering is incorrect in this context. Debate over whether dancing, billiards, or simply stepping on a bar rail is gainful, as opposed to idle, activity is unnecessary. Licensee's manager agreed that GR17 meant "[a]n intoxicated person is not allowed" to remain on the premises, and he did not dispute that the two customers were demonstrably drunk. Thus, licensee recognizes that any person

showing signs of intoxication must be asked to leave, regardless of what activities he or she is engaged in at the time. The regulation is valid on its face, as understood, and as applied to the licensee.

### III. Whether the Board's Conclusion that a Violation Occurred Should be Reversed

¶ 25. Finally, licensee argues that the Board's conclusion that it violated GR17 should be reversed. The Board's factual findings will not be overturned unless they are clearly erroneous and there is no reasonable basis to support them. *In re Capital Inv., Inc.*, 150 Vt. 478, 480-81, 554 A.2d 662, 664 (1988). Furthermore, "[a]bsent compelling indications of error, interpretations of administrative regulations or statutes by the agency responsible for their execution will be sustained on appeal." *Id.* at 482, 554 A.2d at 665. There is ample evidence in the record to support the conclusion that the individuals were intoxicated, and we have no basis to overturn that conclusion. Also, since the rule is violated whenever a licensee allows any patron who exhibits signs of intoxication to remain in a licensed establishment, we reject licensee's argument that one who is wildly dancing while showing signs of intoxication cannot be considered loitering while impaired for the purposes of GR17. Such a person poses a danger to himself and others, and is precisely the person whom the Board has determined should be removed from licensed establishments in order to protect the public safety.[4]

¶ 26. Furthermore, we have said before that licensees have an affirmative duty to become aware of and prevent regulatory violations. See *In re Kacey's*, 2005 VT 51, ¶ 5 (concluding that the term "permitted or suffered" — used in a regulation in a manner similar to "allowed" in GR17 — charges the licensee with an affirmative duty to prevent violations). Thus, licensee's argument that "allowed" in GR17 should be interpreted to mean that a licensee must knowingly allow an intoxicated person to remain in the establishment is unavailing. Licensees cannot avoid responsibility by failing to notice at least one obvious drunk for over ten minutes. They must diligently observe their patrons and will violate GR17 if they know or should know that intoxicated patrons

---

[4] As if to emphasize this point, soon after leaving licensee's establishment, the two customers in question were found by police meandering down the middle of Route 100.

are present in their establishments but fail to remove them promptly. Licensee failed to meet this responsibility.

*Affirmed.*