LeClair v. Pallito, No. 333-12-12 Cacv (Teachout, J., Aug. 28, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Caledonia Unit** | **Docket No. 333-12-12 Cacv** |

**BRIAN LeCLAIR,**
      **Petitioner**

      **v.**

**ANDREW PALLITO, Commissioner,**
**Vermont Department of Corrections,**
      **Respondent**

## DECISION AND ORDER
### Cross-Motions for Summary Judgment

Petitioner Brian LeClair is a prison inmate who seeks Rule 75 review of a disciplinary determination that when he did not remove his sunglasses when requested by a correction officer he interfered with an officer in the performance of duties in violation of prison rules. Plaintiff seeks to have the Disciplinary Report expunged from his record. The case is now before the Court on cross-motions for summary judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a) (Cum. Supp. 2012); *Herring v. Gorczyk*, 173 Vt. 240, 243 (2001).

The facts pertinent to this dispute are partially disputed. Petitioner sought summary judgment and pursuant to Vermont Rule of Civil Procedure 56(c)(1)(A), Defendant Pallito filed a response to Plaintiff's Statement of Undisputed Facts, disputing 3 out of 14 factual assertions in Plaintiff's Statement of Undisputed Facts:

5. "The investigating officer concluded that Mr. LeClair did not promptly follow instructions."

8. "Mr. LeClair was not allowed to confront the reporting officer."

12. "The St. Johnsbury Work Camp has a list of rules 'that are specific to this facility and are in addition to the rules listed in [disciplinary] directive 410.01.'"

Defendant disputes Plaintiff's fact #5 on the ground that Plaintiff's summarization of the cited factual support is inaccurate, but does not dispute the veracity of the factual support Plaintiff cites to in the record. The investigating officer's statement itself is undisputed and shall be considered.

As to Plaintiff's fact #8, again, Defendant disputes Plaintiff's summarization of the cited factual support, but does not dispute the accuracy of the portion of the record that supports Plaintiff's fact #8. Indeed, Defendant cites to the same portion of the record in his Statement of

Undisputed Material Facts (Defendant's fact #7). Thus, the portion of the disciplinary hearing transcript cited to by both Plaintiff and Defendant is undisputed and shall be considered.

Defendant also disputes Plaintiff's fact #12 under Vermont Rule of Civil Procedure 56(c)(1)(B), arguing that "the material cited by Plaintiff to support this assertion lacks foundation and does not indicate which facility the appended rules apply to." That Rule provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . [s]howing that . . . an adverse party cannot produce admissible evidence to support the fact." V.R.C.P. 56(c)(1)(B) (Cum. Supp. 2012).

Plaintiff's fact #12 references page 12 of the attachments to his motion for summary judgment. Attachment page 12 is the same as Exhibit H as attached to Plaintiff's complaint. Here, as in the complaint, Plaintiff indicates that these pages are excerpted from a list of rules specific to the Northeast Correctional Complex (consisting of the Northeast Regional Correctional Facility and the Caledonia Community Work Camp). In the complaint, Plaintiff indicates the rules are taken from the "Northeast Correctional Complex Camp Inmate Handbook." In the motion for summary judgment, Plaintiff simply states that the "St. Johnsbury Work Camp has a list of rules."

Plaintiff could have provided more to support the evidence that is proffered to be a series of rules specific to the Northeast Correctional Complex, but the Court notes that Defendant has not shown that the Plaintiff "cannot produce admissible evidence to support" the proffer. Regardless, the Court does not consider fact #12 to be dispositive of the issues raised in the cross-motions for summary judgment, as this is not a material fact.

Accordingly, the Court takes as true the following facts. Plaintiff LeClair is an inmate committed to the care and custody of the Commissioner of the Vermont Department of Corrections, Defendant in this matter.

On November 25, 2012, Plaintiff received an Inmate Disciplinary Report, in which Correction Officer Max Field accused Plaintiff of "interfering with an officer in the performance of duties," a Major B-18 violation.[1] Plaintiff's Attachment, 1. On the accompanying Incident Report Form, Officer Field described the incident as follows:

> While working third shift in South Unit inmate Leclair, Brian was wearing sunglasses when he entered the bathroom at 2318. When inmate Leclair exited the bathroom I told him to take off his sunglasses so I could see his eyes, Leclair told me no that there was no rules against wearing sunglasses in the unit and that he spoke to the previous officer about it. I informed Leclair that he will receive a Major DR for interfering with my duties. I gave Leclair multiple directions to take the sunglasses off while he was looking at the inmate handbook so I could

---

[1] Major B-18 reads, in whole: "Interfering with an officer in the performance of duties or any disobedience or refusal of an officer's instruction or order that threatens or disrupts institutional security or interferes with the taking of an official institutional headcount." DOC Directive 410.01, Attachment 1, at 20, *available at* http://www.doc. state.vt.us/about/ policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01- facility-rules-and-inmate-discipline.

see his eyes.  At 2320 Leclair left my desk after saying then UA me and after he turned around to go back to his bunk he took the sunglasses off.  End of report.

*Id.* at 2.

Immediately following this interaction with Officer Field, Plaintiff filled out an Informal Complaint & Plan for Resolution Form in which he requested the Disciplinary Report be dismissed and proposed a "Plan for Resolution" under which he would "take off the sunglasses when told to and to explain to the officer why instead of getting angry about the situation."  *Id.* at 3.

Officer H. DeGreenia was assigned to investigate the Disciplinary Report.  *Id.* at 1.  On November 30, 2012, Officer DeGreenia filled out an Investigating Officers Report Form.  *Id.* at 4.  Officer DeGreenia summarized Plaintiff's position as follows:

Leclair stated he came out of the unit restroom with his sunglasses on and CO1 Field instructed him to remove his sunglasses.  Brian claimed he asked why and Field told him he wanted to see his eyes and repeated his direction.  Lecair [sic] then claimed he stated that he didn't understand because he knew hats were not allowed inside but hadn't read any rule about not wearing sun glasses inside. Field instructed him again and Leclair then pulled his glasses off as he turned away and as he walked off Lecair [sic] claimed he told Field to put him in for a UA if he thought he was using drugs.

*Id.* at 4.  In the "Investigating Officer Statement" section on the Form, Officer DeGreenia concluded: "Leclair's statement above clearly admits that he didn't follow Officer Fields [sic] instruction until he was walking away and didn't allow the officer to look at his eyes."  *Id.*

A disciplinary hearing was held on December 3, 2012.  *Id.* at 6; Disciplinary Hearing Transcript.  DOC did not call any witnesses but presented the original Notice of Hearing, the November 25 Inmate Disciplinary Report, the Novermber 25 Incident Report Form, Plaintiff's Disciplinary Report History, and Officer DeGreenia's November 30 Investigating Officers Report Form.  Disciplinary Hearing Transcript, 2–3.

Plaintiff testified on his own behalf.  According to Plaintiff, there is a light directly above his bed.  *Id.* at 3.  The night of November 25, Plaintiff woke up with "a really, really, really bad headache."  *Id.*  He testified that he was having "some problems seeing with the light that was kind of glaring in my eyes, and the headache."  *Id.*  Plaintiff testified that he had to go to the bathroom, and that as he was walking out of the bathroom, Officer Field asked him to "come over to the desk."  *Id.*  According to Plaintiff's testimony, it is "really difficult to see in that area."  *Id.*  Plaintiff testified that Officer Field directed him to take off his glasses and Plaintiff responded that he was not "aware of a rule about it."  Plaintiff stated that Officer Field again told him to take off the glasses, but that Plaintiff "had a headache, so as I turned—as I turned around right then, I just turned around, and I just walked away.  As I was turning around, I took off my glasses."  *Id.*

Plaintiff also called inmate Kareem Bennett who testified that Plaintiff took off his glasses "directly" when Officer Field requested.  *Id.* at 5.

3

On the Notice of Hearing, Plaintiff requested that Officer Field be present for the hearing. Attachment, 5; Disciplinary Hearing Transcript, 5–6. Officer Field, however, was not at the hearing. The transcript of the hearing indicates that Officer Field did not attend because "he's not readily available. He's en route headed home. He just got done a twelve-hour shift." Transcript, 6. Accordingly, Plaintiff did not confront Officer Field at the hearing.

At the conclusion of the hearing, the Hearing Officer found Plaintiff guilty of the charged disciplinary violation, stating on the record:

> I find you guilty. Officer Field wanted to see your eyes to see if you had been doing anything wrong. You were given multiple directions to remove the glasses. You stated that it was dark in there that you could barely see yourself, and you still had the glasses on. That's a safety hazard. The investigating officer, DeGreenia, states that you clearly did not follow Officer Field's instruction until after you turned around.

*Id*.

Plaintiff appealed his conviction the same day as the hearing. Attachment, 8–13. The Superintendent denied his appeal the same day, explaining:

> I have reviewed the hearing packet and there has been no violation of your due process rights. The hearing officer has determined that a preponderance of evidence exists to support the guilty finding of a B-18 in that you did interfere with officers [sic] duties by not allowing him to look at your eyes.

*Id*. at 8. Plaintiff received notice of the denial the following day. *Id*.

On December 21, 2012, Plaintiff filed this Rule 75 petition.

In seeking summary judgment, Plaintiff argues that he was overcharged, that rule B-18 is vague as applied to him, that the hearing officer's findings do not support his legal conclusion, that his due process rights were violated, and that there is insufficient evidence to support the B-18 conviction. Defendant argues that he is entitled to judgment as a matter of law on all of the above.

Plaintiff's argument that he was overcharged is without merit. There is no evidence suggesting that Officer Field's election to charge Plaintiff with a Major B-18 violation instead of some other lesser violation was somehow impermissible. The existence of other rules which Plaintiff may or may not have violated, some of which may carry lesser or harsher penalties, does not invalidate the State's choice of charge. The State still bears the burden of proof in establishing each and every element of any violation charged. A charge is not an impermissible "overcharge" if there is evidence to support it. As discussed below, there was factual support for the charge.

The Court also concludes that Major B-18 is not unconstitutionally vague as applied to Plaintiff. "Lack of statutory clarity offends notions of due process for no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

*Benning v. State*, 161 Vt. 472, 483 (1994) (citation omitted) (internal quotation marks omitted). "Due process of law requires notice sufficient to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them.'" *Sec'y, Vt. Agency of Natural Res. v. Irish*, 169 Vt. 407, 411 (1999) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *State v. Cantrell*, 151 Vt. 130, 133 (1989) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Of course, "[s]tatutes or regulations need not detail each and every act or conduct that is prohibited in order to provide fair notice of what behavior they cover." *In re Rusty Nail Acquisition, Inc.*, 2009 VT 68, ¶ 16, 186 Vt. 195 (citation omitted) (internal quotation marks omitted). Language that "conveys a definite warning as to proscribed conduct when measured by common understanding and practices will satisfy due process." *Id.* (citation omitted) (internal quotation marks omitted).

Where the statute or regulation at issue does not threaten the exercise of constitutionally protected rights, the test is less strict. *Benning v. State*, 161 Vt. 472, 483 (1994) (citing *Rogers v. Watson*, 156 Vt. 483, 491 (1991)). Where the vagueness challenge to a statute is not one involving the First Amendment, the challenge must be examined in light of its facts. *Id.* (citing *State v. Roy*, 140 Vt. 219, 229 (1981)).

Here, Plaintiff contends the rule is void for vagueness as applied to him, arguing it did not give him adequate notice that the conduct at issue was prohibited. The Court concludes that as applied to the conduct at issue in this case, the rule is not unconstitutionally vague. The facts show that Officer Field informed Plaintiff multiple times prior to charging Plaintiff with violating Major B-18 that Officer Field required Plaintiff to remove his sunglasses so that he could see his eyes and that if Plaintiff did not comply he would be charged with a Major B-18 violation. Considering that DOC maintains numerous prohibitions, restrictions, and rules related to alcohol and prescription and illicit drugs[2] and in conjunction with Plaintiff's statement to Officer Field that he should "put him in for a UA if he thought he was using drugs," it is clear that Plaintiff believed Officer Field was attempting to ascertain Plaintiff's compliance with DOC's rules related to alcohol and drugs. On these facts, the Court cannot conclude that Plaintiff was not adequately apprised of what was required of him such that a Major B-18 violation under the facts of this case was so vague as to be unconstitutional.

The Court also concludes that Plaintiff's due process rights were not violated by Officer Field not attending the December 3 hearing despite Plaintiff indicating on the Notice of Hearing form that he wished Officer Field to be present.

Vermont law provides that, "[i]n disciplinary cases, which may involve the imposition of disciplinary segregation or the loss of good time, the disciplinary committee or a designated hearing officer shall conduct a fact-finding hearing" and "[t]he inmate shall have an opportunity subject to reasonable rules to confront the person bringing the charge. . . ." 28 V.S.A. § 852(b)(2). "A prisoner has a constitutionally protected interest in disciplinary hearings that are not so lacking in procedural safeguards that they create substantial doubt that these prisoners committed the offenses for which they were disciplined." *Herring v. Gorczyk*, 173 Vt. 240, 245 (2001) (quotation omitted).

---

[2] E.g., Major A-19, Major A-20, and Major B-30.

The Department of Corrections has created rules to administer disciplinary hearings. If a requested witness is not available for a hearing "because of work schedules, transfers or other causes," the inmate charged with a violation may request a continuance. Vt. Admin. Code 12-8-13:2(c)(1). Additionally,

> If any requested witness(es) (including the Reporting Officer) did not testify or did not appear at the hearing for any reason, the Hearing Officer will state the reasons why on the hearing recording and in the written report, noting in the report the forms of alternative testimony used. Witnesses may provide testimony using alternate forms of communication when they cannot be present at the hearing (e.g. . . . written statement).

DOC Directive 410.01 § 6(c).

Here, Officer Field was the person bringing the charge and Plaintiff, on the Notice of Hearing form, indicated that he wished Officer Field to be present at the hearing. The undisputed facts show that Officer Field was not present at the December 3 hearing because, prior to the start of the hearing, he had finished a 12-hour shift and was on his way home. The hearing officer properly explained on the record the reason for Officer Field's absence and Plaintiff did not request a continuance as was his right under the rules. Accordingly the Court finds no error.

Plaintiff's remaining two arguments, that the hearing officer's findings do not support his legal conclusions and that there is insufficient evidence to support the Major B-18 conviction are similar and shall be addressed together.

Prison authorities are required to prove inmate disciplinary violations by a "preponderance of the evidence." *LaFaso v. Patrissi*, 161 Vt. 46, 50 (1993). "On judicial review of the sufficiency of the evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by 'some evidence' in the record." *Herring*, 173 Vt. at 243 (citing *LaFaso*, 161 Vt. at 49). The Vermont Supreme Court has held that, in determining whether the "some evidence" standard has been met, "the relevant question is whether there is <u>any</u> evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. (emphasis added) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

Here, Plaintiff was charged and convicted of a Major B-18 violation:

> Interfering with an officer in the performance of duties or any disobedience or refusal of an officer's instruction or order that threatens or disrupts institutional security or interferes with the taking of an official institutional headcount.

DOC Directive 410.01, Attachment 1, at 20, *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.

This charge requires proof of two elements; thus, the State must prove by a preponderance of the evidence that Plaintiff:

1. interfered with an officer in the performance of duties or disobeyed or refused an officer's instruction or order that

2. threatened or disrupted institutional security or interfered with the taking of an official institutional headcount.

None of the relevant terms in the rule are defined.

In finding Plaintiff guilty, the hearing officer held:

I find you guilty. Officer Field wanted to see your eyes to see if you had been doing anything wrong. You were given multiple directions to remove the glasses. You stated that it was dark in there that you could barely see yourself, and you still had the glasses on. That's a safety hazard. The investigating officer, DeGreenia, states that you clearly did not follow Officer Field's instruction until after you turned around.

Plaintiff only challenges the first element, contending that his actions that night did not interfere with Officer Field's performance of duties. Rather, Plaintiff asserts that he was "merely slow to follow through with the instructions to take off his sunglasses."

Defendant argues there is "some evidence" in the record to support the conclusions of the hearing officer that Plaintiff disobeyed Officer Field and additionally addresses the second element, arguing that drug use and wearing sunglasses at night threaten or disrupt institutional security.

As to the first element, the Court concludes there is "some evidence" in the record to support the hearing officer's conclusion that Plaintiff interfered with performance of Officer Field's duties. One part of a correction officer's duties is ensuring that inmates follow the rules. DOC maintains numerous rules proscribing drug and alcohol use. The hearing officer concluded that Officer Field wanted to see Plaintiff's eyes, Plaintiff was given multiple instructions to remove his sunglasses for that purpose, and Plaintiff did not remove his sunglasses until he turned around. There is ample evidence in the record—including Plaintiff's own statements—to support this conclusion.

Plaintiff does not challenge whether his actions could constitute a threat or disruption to institutional security and thus the Court need not address it. However, the Court notes that even had Plaintiff challenged this element, there is "some evidence" in the record to meet this element as well. The hearing officer found that Officer Field wanted to see Plaintiff's eyes to see if he had been doing anything wrong, which, Defendant contends, refers to the possibility of illicit drug use. That drug use by an inmate in a secure prison facility constitutes a threat to institutional security is readily apparent. Accordingly, Plaintiff, by refusing to comply with Officer Field's request to remove his sunglasses, interfered with Officer Field's duties such that it threatened institutional security by preventing Officer Field from checking for illicit drug use. Additionally, the hearing officer concluded that wearing sunglasses in a darkened area at night constitutes a "safety hazard." Although it could have been stated in a clearer manner, the obvious conclusion is that such safety hazards threaten the security of the institution. This conclusion is amply met by the record, including Plaintiff's own testimony during the hearing

7

that it was hard to see in the area near the restroom and Officer Field's desk. Thus, by disobeying Officer Field's request to remove his sunglasses, Plaintiff's actions threatened institutional security by creating a risk of harm to himself or others.

In sum, Plaintiff has failed to show in this Rule 75 review that the hearing officer's findings do not support his legal conclusion. Plaintiff's argument that the facts are insufficient to support the finding of a violation also fails. The evidence adduced at the hearing is sufficient to show that Plaintiff interfered with Officer Field's duties by refusing to remove his sunglasses, despite repeated instructions to do so, so that Officer Field could view Plaintiff's eyes to check for illicit drug use. Plaintiff's refusal to remove his sunglasses in the darkened area was a safety hazard to himself and others and his refusal to let Officer Field view his eyes threatened institutional security by preventing Officer Field from checking for illicit drug use.

## ORDER

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is *denied* and Defendant's Motion for Summary Judgment is *granted*.

Dated at Saint Johnsbury, Vermont, this 28th day of August, 2013.

_____
Hon. Mary Miles Teachout
Superior Court Judge