2015 VT 51

# In re New England Police Benevolent Association Petition for Election of Collective Bargaining Representative

[121 A.3d 669]

No. 14-146

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

Opinion Filed March 27, 2015

*Stefan Ricci* of *Ricci Law, PLC*, Windsor, for Appellant.

*William H. Sorrell*, Attorney General, and *Naomi Sheffield*, Assistant Attorney General, Montpelier, for Appellee State.

*Alfred Gordon O'Connell* of *Pyle Rome Ehrenberg PC*, Boston, Massachusetts, for Appellee Vermont State Employees' Association.

¶ 1. **Dooley, J.** The New England Police Benevolent Association (NEPBA) appeals the Vermont Labor Relations Board's dismissal of NEPBA's petition for election of a collective-bargaining representative for NEPBA's failure to provide justification for its untimely filing. We affirm.

¶ 2. On January 30, 2014, NEPBA filed a petition for the election of a collective-bargaining representative to represent the sworn law enforcement officers of the Vermont Department of Fish and Wildlife, Vermont Department of Liquor Control, and Vermont Department of Motor Vehicles (collectively "the officers"). The officers seeking new representation are among those in the Non-Management Bargaining Unit, which is covered by a collective-bargaining agreement between the Vermont State Employees Association (VSEA) and the State of Vermont. The existing collective-bargaining agreement was set to expire on June 30, 2014, and the Non-Management Bargaining Unit was scheduled to conduct a ratification vote on a successor agreement on January 31, 2014, the day after the petition was filed.

¶ 3. On January 31, 2014, the day after NEPBA's filing, the Board contacted NEPBA requesting justification for why the normal time period for filing a petition should be waived. According to § 13.2 of the Board Rules of Practice, which governs timely filing of petitions for election of a collective-bargaining representative and imposes the "contract-bar" rule, the filing window was August 9, 2013, through September 8, 2013. NEPBA responded that the majority of employees in the VSEA unit have interests different from those of the sworn law enforcement officers and

that ratification of the agreement to extend the contract would foreclose the officers' opportunity to freely elect a new representative to represent their interests.

¶ 4. On March 28, 2014, the Board issued its decision. The Board found that NEPBA provided no justification for why the normal time period should be waived but rather "incorrectly assert[ed] that the petition was filed *prior* to the normal time period in which to file petitions." The Board concluded that considering the timeliness of the petition in the absence of justification "would be unfair to incumbent representative VSEA and the State who negotiated the contract at a time following the open period in which they were entitled to negotiate free from the threat of challenge to the majority status of the employee representative." Consequently, the Board dismissed the petition. This appeal followed.

¶ 5. On appeal, NEPBA argues that the Board failed to consider its proffered justification and instead improperly concluded that NEPBA provided *no* justification. Moreover, NEPBA asserts that the Board failed to conduct any analysis in support of its position, explain its findings, or define the applicable legal standard. NEPBA also argues that its proffered justification — that the pending ratification of the successor agreement would foreclose the officers' opportunity to select a collective-bargaining representative — is sufficient to waive the normal period for timely filing. We disagree with NEPBA on the first issue and hold that the Board did not err in dismissing the petition for NEPBA's failure to provide a justification for the untimely filing.

¶ 6. Our review of the Board's decision is highly deferential and "is limited to evaluating whether the evidence supports the Board's factual findings, and whether those findings, taken as a whole, justify the conclusions of law." *United Academics v. Univ. of Vt.*, 2005 VT 96, ¶ 9, 179 Vt. 60, 889 A.2d 722. We will uphold an agency's interpretation of its own regulation absent compelling indication of error. See *In re Rusty Nail Acquisition, Inc.*, 2009 VT 68, ¶ 12, 186 Vt. 195, 980 A.2d 758.

¶ 7. ■ As explained in more detail below, this case involves the Board's implementation of the contract-bar doctrine. The Board has the discretion to " 'apply or waive [the doctrine] as the facts of a given case may demand in the interest of stability and fairness in collective bargaining agreements.' " *St. Albans Police*

*Officers Ass'n,* 8 V.L.R.B. 46, 54 (1985) (quoting *Local 1545, United Bhd. of Carpenters v. Vincent,* 286 F.2d 127, 131 (2d Cir. 1960)). Consistent with this discretion, we review the Board's dismissal of an untimely petition for abuse of discretion, *In re Rosenberger,* 2009 VT 18, ¶ 20, 185 Vt. 343, 970 A.2d 1257, and will affirm unless the dismissal is clearly erroneous. *In re AFSCME, Local 490,* 153 Vt. 318, 321, 571 A.2d 63, 65 (1989). Petitioners bear the burden of "present[ing] sufficient justification for waiving the normal time period." *Town & Vill. of Ludlow Emps.,* 32 V.L.R.B. 48, 51 (2012).

¶ 8. ■■ The contract-bar doctrine defines the open period for filing election petitions by prospective collective-bargaining representatives. Section 13.2 of the Board Rules of Practice[1] states the contract-bar rule under the State Employees Labor Relations Act:

> If a collective bargaining agreement is in effect which covers any or all of the employees to be covered by the petition, a petition shall normally be considered timely only if filed during the period 150 to 120 days prior to the date the General Assembly convenes in regular session for the year during which the collective bargaining agreement expires or if filed after the expiration date of the agreement if a successor agreement has not become effective. A petitioner filing a petition at any other time shall justify why the normal time period should be waived.

The objective of the contract-bar doctrine "is to achieve a reasonable balance between the competing interests of stabilizing the employer-union relationship and free employee choice of representative." *St. Albans Police Officers Ass'n,* 8 V.L.R.B. at 52. Barring petitions during the remainder of the term of a preexisting contract "provides a settled work environment and stabilization of the employer-union relationship necessary for productive labor relations." *Id.* at 53. Absent justification, the Board generally will not entertain petitions during the "insulated period" between the open period and the expiration of the existing agreement. See *Town & Vill. of Ludlow Emps.,* 32 V.L.R.B. at 54; *Deluxe Metal Furniture Co.,* 121 N.L.R.B. 995, 1001 (1958) (emphasizing importance of insulated period in "prevent[ing] the threat of overhang-

---

[1] NEPBA has not challenged the validity of § 13.2 in this case.

ing rivalry and uncertainty during the bargaining period, and . . . eliminat[ing] the possibility for employees to wait and see how bargaining is proceeding and use another union as a threat to force their current representative into unreasonable demands"), *abrogated on other grounds by Leonard Wholesale Meats, Inc.,* 136 N.L.R.B. 1000 (1962).

¶ 9. With this background and our limited scope of review in mind, we consider NEPBA's argument that the Board erred in concluding that NEPBA offered no justification for its untimely filing. NEPBA stated in its motion for waiver of the normal time period:

> The entire Non-Management unit of the VSEA held a ratification vote prior to the "open" period in which a petition for election would have been considered timely filed in accordance with the contract-bar doctrine and section 13.2 of the Board Rules of Practice. Had the Non-Management unit decided to ratify the [agreement] on January 31, 2014 and effectively extended the terms of their present contract, the [officers] would have effectively lost their opportunity to freely select a collective bargaining representative.

NEPBA further emphasized that the ability of the Non-Management Unit to ratify their contract prior to the open period "would be inconsistent with the purpose of the contract-bar doctrine" and "promote disorderly and disruptive labor relations."

¶ 10. NEPBA's motion led to confusion about the applicable "open period." As noted above, the Board concluded that NEPBA incorrectly interpreted the open period as occurring *after* NEPBA filed its petition, rather than the period between August 9 and September 8, 2013, which occurred *prior* to NEPBA filing its petition.

¶ 11. ▮ NEPBA argues on appeal that the Board's construction of its motion — that NEPBA misinterpreted the open period — is "a linguistic impropriety to distort NEPBA's justifications." NEPBA asserts that § 13.2 provides two timely open periods — (1) 120 to 150 days before the General Assembly convenes and (2) upon expiration of an agreement if no new successor agreement is in place — and that it was referring to the second open period in its motion. NEPBA further asserts that the effect of the ratifi-

cation vote was to eliminate the open period upon contract expiration and that this justifies waiver of the contract-bar rule. The logic of this argument escapes us. We recognize that, under § 13.2, an open period is created when the contract negotiated by the current representative for the preexisting bargaining unit expires, if a successor agreement is not in place. Section 13.2, however, requires that the petition for representation be filed *after* the contract expires, not five months in advance of that date, as here. It is likely in every case that the representative is attempting to negotiate a new contract with the employer so that there is no gap between the end of one contract and the start of another. Under NEPBA's theory, the contract-bar doctrine virtually never would apply.

¶ 12. The Board held that the "normal time period" for NEPBA to file its petition, as specified in § 13.2, was August 9, 2013, through September 8, 2013, and that § 13.2 requires NEPBA to "justify why the normal time period should be waived." We find no compelling indication of error in this interpretation of the rule and affirm it under our deferential standard of review.

¶ 13. Nevertheless, NEPBA argues that the Board always considers the merits of a petitioner's justification, even if the justification does not explain why the petitioner failed to file during the open period, citing Board decisions in *Town & Village of Ludlow Employees*, 32 V.L.R.B. 48, and *City of Montpelier Public Works Employees*, 23 V.L.R.B. 162 (2000).[2] *Town & Village of Ludlow Employees* is inapposite because the petitioner there offered several justifications for its delay in filing during the open period, including lack of awareness of the Board rules and setbacks due to Tropical Storm Irene. While *City of Montpelier Public Works Employees* is on point, it undermines NEPBA's argument. There, the petitioners filed a petition fifty-six days prior to the expiration of the agreement, just after the expiration of the thirty-day window for timely filing established for municipal employees under § 33.2 of the Board rules. The petitioners requested a waiver of the normal time period on the grounds that "negotiations for a successor agreement were complete at the time the petition was filed, and the Union president promised to not stand in the way of a vote on the union representing employees."

---

[2] NEPBA cites several other Board decisions for the same point, none of which we find applicable.

23 V.L.R.B. at 162. The Board noted the policy behind the contract-bar doctrine and then briefly concluded:

> In applying these standards, we conclude that the decertification petition should be dismissed because the petitioning employees have not presented sufficient justification for waiving the normal time period. Contrary to the petitioning employees' claim, negotiations were not complete at the time the petition was filed as employees had voted to reject the tentative negotiated agreement, thus requiring further negotiations. Further, any statement by the Union president concerning not standing in the way of a vote on the union representing employees does not constitute an effective waiver of the Union's ability to contest an untimely petition.

*Id.* at 163-64. The extent of the Board's decision there was to address the contract-bar doctrine and then explain that the petitioners incorrectly stated that negotiations were complete and misconstrued the effect of the union president's statement. Nowhere did the Board explain a legal standard for "sufficient justification" or address the underlying merits of why the petitioners sought decertification in the first place. Although the Board concluded that the petitioners failed to provide "sufficient justification" rather than "no justification," the precise use of the language does not change the nature of the decision. The Board in *City of Montpelier Public Works Employees* conducted the same analysis as did the Board here.

¶ 14. The Board ruled here that NEPBA was required to provide a timing-related justification specifically addressing why it did not file its petition in the open period in 2013 and found that NEPBA failed to do so. We do not read *City of Montpelier Public Works Employees* as inconsistent with that analysis. NEPBA never explained why it was unable to file during the open period, and, although NEPBA argues that VSEA and the State simply assume "that only facts which bear on a petitioner's ability or inability to file during the initial 'open' period are 'cognizable,' " we find no precedent inconsistent with that rationale. In this Court, NEPBA reiterates many of the arguments offered in its motion for waiver: that the officers' interests do not align with those of the Non-Management Unit; that the officers lack effective voting power; and that ratification of the contract will foreclose the

officers' ability to freely select representation. These arguments may support the creation of a new bargaining unit but do not justify untimely filing because they do not explain why NEPBA was unable to file its petition during the open period.

¶ 15. Finally, although the Board ruled on the basis that NEPBA did not provide any justification for why the normal time period should be waived, it did, in its consideration of whether to dismiss the petition in absence of a justification, expound upon the principles of the contract-bar doctrine and why the doctrine counsels against filing petitions after the open period and before the expiration of the contract. The Board addressed the objectives of balancing the "competing interests of stabilizing the employer-union relationship and free employee choice of representative" and allowing the parties "to negotiate free from the threat of a challenge to the majority status of the employee representative." Here, NEPBA is attempting to upset the existing bargaining relationship on the eve of ratification of a new contract. It would be difficult to find a case where the failure to file a petition for a representation change could be more untimely.

¶ 16. ■ In light of our standard of review, we conclude that the Board exercised its discretion in dismissing NEPBA's petition. The Board did not err in finding that NEPBA provided no relevant justification for its untimely filing. Nor did the Board err in concluding that NEPBA's untimely filing — *after* the open period — threatened the objectives of the contract-bar doctrine. The burden was on NEPBA to provide justification, and the Board did not err in concluding that it failed to meet that burden.

¶ 17. Because we hold that the Board exercised its discretion in concluding that NEPBA provided no proper justification for waiving the normal time period, we do not reach the merits of NEPBA's justification.

*Affirmed.*