2015 VT 51












In re New England Police
Benevolent Association Petition (2014-146)

 

2015 VT 51

 

[Filed 25-Mar-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 51
 
 


 


 
 
 No. 2014-146
 
 


 


 
 
 In re New England Police
 Benevolent Association 
 Petition for Election of Collective Bargaining
 Representative
 
 
 Supreme Court
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
  
 
 
 Labor Relations Board
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 December Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Richard
 W. Park, Chair
 
 
 
 
  
 
 


Stefan Ricci of Ricci Law, PLC, Windsor,
for Appellant.

 

William H. Sorrell, Attorney General, and Naomi Sheffield,
Assistant Attorney General,

  Montpelier, for Appellee State.

 

Alfred Gordon O’Connell of Pyle Rome Ehrenberg PC, Boston,
Massachusetts, for Appellee  

  Vermont State Employees’
Association.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Robinson and Eaton, JJ.

 

 

¶ 1.            
DOOLEY, J.   The New England Police Benevolent
Association (NEPBA) appeals the Vermont Labor Relations Board’s dismissal of
NEPBA’s petition for election of a collective-bargaining representative for
NEPBA’s failure to provide justification for its untimely filing.  We
affirm.

¶ 2.            
On January 30, 2014, NEPBA filed a petition for the election of a
collective-bargaining representative to represent the sworn law
enforcement officers of the Vermont Department of Fish and Wildlife, Vermont
Department of Liquor Control, and Vermont Department of Motor Vehicles
(collectively “the officers”).  The officers seeking new representation
are among those in the Non-Management Bargaining Unit, which is covered by a
collective-bargaining agreement between the Vermont State Employees Association
(VSEA) and the State of Vermont.  The existing collective-bargaining
agreement was set to expire on June 30, 2014, and the Non-Management Bargaining
Unit was scheduled to conduct a ratification vote on a successor agreement on
January 31, 2014, the day after the petition was filed.

¶ 3.            
On January 31, 2014, the day after NEPBA’s filing, the Board contacted
NEPBA requesting justification for why the normal time period for filing a
petition should be waived.  According to § 13.2 of the Board Rules of
Practice, which governs timely filing of petitions for election of a
collective-bargaining representative and imposes the “contract-bar” rule, the
filing window was August 9, 2013, through September 8, 2013.  NEPBA responded
that the majority of employees in the VSEA unit have interests different from
those of the sworn law enforcement officers and that ratification of the
agreement to extend the contract would foreclose the officers’ opportunity to
freely elect a new representative to represent their interests.  

¶ 4.            
On March 28, 2014, the Board issued its decision.  The Board found
that NEPBA provided no justification for why the normal time period should be
waived but rather “incorrectly assert[ed] that the
petition was filed prior to the normal time period in which to file
petitions.”  The Board concluded that considering the timeliness of the
petition in the absence of justification “would be unfair to incumbent
representative VSEA and the State who negotiated the contract at a time
following the open period in which they were entitled to negotiate free from
the threat of challenge to the majority status of the employee
representative.”  Consequently, the Board dismissed the petition. 
This appeal followed.

¶ 5.            
On appeal, NEPBA argues that the Board failed to consider its proffered
justification and instead improperly concluded that the NEPBA provided no
justification.  Moreover, NEPBA asserts that the Board failed to conduct
any analysis in support of its position, explain its findings, or define the
applicable legal standard.  NEPBA also argues that its proffered
justification—that the pending ratification of the successor agreement would
foreclose the officers’ opportunity to select a collective-bargaining
representative­—is sufficient to waive the normal period for timely
filing.  We disagree with NEPBA on the first issue and hold that the Board
did not err in dismissing the petition for NEPBA’s failure to provide a
justification for the untimely filing.

¶ 6.            
Our review of the Board’s decision is highly deferential and “is limited
to evaluating whether the evidence supports the Board’s factual findings, and
whether those findings, taken as a whole, justify the conclusions of law.” 
United Academics v. Univ. of Vt., 2005 VT 96, ¶ 9, 179 Vt. 60, 889 A.2d 722.  We will uphold an agency’s
interpretation of its own regulation absent compelling indication of
error.  See In re Rusty Nail Acquisition, Inc., 2009 VT 68,
¶ 12, 186 Vt. 195, 980 A.2d 758.  

¶ 7.            
As explained in more detail below, this case involves the Board’s
implementation of the contract-bar doctrine.  The Board has the discretion
to “apply or waive [the doctrine] as the facts of a given case may demand in
the interest of stability and fairness in collective bargaining
agreements.”  St. Albans Police Officers Ass’n,
8 V.L.R.B. 46, 54 (1985) (quoting Local 1545, United Bhd. of Carpenters
v. Vincent, 286 F.2d 127, 131 (2d Cir. 1960)).  Consistent with this
discretion, we review the Board’s dismissal of an untimely petition for abuse
of discretion, In re Rosenberger, 2009 VT 18, ¶ 20, 185 Vt. 343,
970 A.2d 1257, and will affirm unless the dismissal is clearly erroneous. 
In re AFSCME, Local 490, 153 Vt. 318, 321, 571 A.2d
63, 65 (1989).  Petitioners bear the burden of “present[ing] sufficient justification for waiving the normal time
period.”  Town & Vill.
of Ludlow Emps., 32
V.L.R.B. 48, 51 (2012).

¶ 8.            
The contract-bar doctrine defines the open period for filing election
petitions by prospective collective-bargaining representatives.  Section
13.2 of the Board Rules of Practice[1]
states the contract-bar rule under the State Employees Labor Relations Act:

  If a collective bargaining
agreement is in effect which covers any or all of the employees to be covered
by the petition, a petition shall normally be considered timely only if filed
during the period 150 to 120 days prior to the date the General Assembly
convenes in regular session for the year during which the collective bargaining
agreement expires or if filed after the expiration date of the agreement if a
successor agreement has not become effective.  A petitioner filing a
petition at any other time shall justify why the normal time period should be
waived.

The objective of the contract-bar
doctrine “is to achieve a reasonable balance between the competing interests of
stabilizing the employer-union relationship and free employee choice of
representative.”  St. Albans Police Officers Ass’n,
8 V.L.R.B. at 52.  Barring petitions during the
remainder of the term of a preexisting contract “provides a settled work
environment and stabilization of the employer-union relationship necessary for
productive labor relations.”  Id. at 53. 
Absent justification, the Board generally will not entertain petitions during
the “insulated period” between the open period and the expiration of the
existing agreement.  See Town & Vill. of
Ludlow Emps., 32 V.L.R.B. at 54; Deluxe Metal
Furniture Co., 121 N.L.R.B. 995, 1001 (1958) (emphasizing importance of
insulated period in “prevent[ing] the threat of
overhanging rivalry and uncertainty during the bargaining period,
and . . . eliminat[ing] the possibility for employees to wait and see how
bargaining is proceeding and use another union as a threat to force their
current representative into unreasonable demands”), abrogated on other
grounds by Leonard Wholesale Meats, Inc., 136 N.L.R.B. 103 (1962).

¶ 9.            
With this background and our limited scope of review in mind, we
consider NEPBA’s argument that the Board erred in concluding that NEPBA offered
no justification for its untimely filing.  NEPBA stated in its motion for
waiver of the normal time period:

  The entire Non-Management unit of
the VSEA held a ratification vote prior to the “open” period in which a
petition for election would have been considered timely filed in accordance
with the contract-bar doctrine and section 13.2 of the Board Rules of
Practice.  Had the Non-Management unit decided to ratify the [agreement]
on January 31, 2014 and effectively extended the terms of their present
contract, the [officers] would have effectively lost their opportunity to
freely select a collective bargaining representative.

NEPBA further emphasized that the
ability of the Non-Management Unit to ratify their contract prior to the open
period “would be inconsistent with the purpose of the contract-bar doctrine”
and “promote disorderly and disruptive labor relations.”

¶ 10.         NEPBA’s
motion led to confusion about the applicable “open period.”  As noted
above, the Board concluded that NEPBA incorrectly interpreted the open period
as occurring after NEPBA filed its petition, rather than the period
between August 9 and September 8, 2013, which occurred prior to NEPBA
filing its petition.

¶ 11.         NEPBA
argues on appeal that the Board’s construction of its motion—that NEPBA
misinterpreted the open period—is “a linguistic impropriety to distort NEPBA’s
justifications.”  NEPBA asserts that § 13.2 provides two timely open
periods—(1) 120 to 150 days before the General Assembly convenes and (2) upon
expiration of an agreement if no new successor agreement is in place—and that
it was referring to the second open period in its motion.  NEPBA further
asserts that the effect of the ratification vote was to eliminate the open
period upon contract expiration and that this justifies waiver of the
contract-bar rule.  The logic of this argument escapes us.  We
recognize that, under § 13.2, an open period is created when the contract
negotiated by the current representative for the preexisting bargaining unit
expires, if a successor agreement is not in place.  Section 13.2, however,
requires that the petition for representation be filed after the
contract expires, not five months in advance of that date, as here.  It is
likely in every case that the representative is attempting to negotiate a new
contract with the employer so that there is no gap between the end of one
contract and the start of another.  Under NEPBA’s theory, the contract-bar
doctrine virtually never would apply.

¶ 12.         The
Board held that the “normal time period” for NEBPA to file its petition, as
specified in § 13.2, was August 9, 2013, through September 8, 2013, and that
§ 13.2 requires NEBPA to “justify why the normal time period should be
waived.”  We find no compelling indication of error in this interpretation
of the rule and affirm it under our deferential standard of review.  

¶ 13.         Nevertheless,
NEPBA argues that the Board always considers the merits of a petitioner’s
justification, even if the justification does not explain why the petitioner
failed to file during the open period, citing Board decisions in Town and
Village of Ludlow Employees, 32 V.L.R.B. 48 (2012), and City of
Montpelier Public Works Employees, 23 V.L.R.B. 162 (2000).[2]  Town and Village of Ludlow
Employees is inapposite because the petitioner there offered several
justifications for its delay in filing during the open period, including lack
of awareness of the Board Rules and setbacks due to Tropical Storm Irene.
 While City of Montpelier Public Works Employees is on point, it
undermines NEPBA’s argument.  There, the petitioners filed a petition
fifty-six days prior to the expiration of the agreement, just after the
expiration of the thirty-day window for timely filing established for municipal
employees under § 33.2 of the Board Rules.  The petitioners requested
a waiver of the normal time period on the grounds that “negotiations for a
successor agreement were complete at the time the petition was filed, and the
Union president promised to not stand in the way of a vote on the union
representing employees.”  23 V.L.R.B. at 162. 
The Board noted the policy behind the contract-bar doctrine and then briefly
concluded:

  In applying these standards, we
conclude that the decertification petition should be dismissed because the
petitioning employees have not presented sufficient justification for waiving
the normal time period.  Contrary to the petitioning employees’ claim,
negotiations were not complete at the time the petition was filed as employees
had voted to reject the tentative negotiated agreement, thus requiring further
negotiations.  Further, any statement by the Union president concerning
not standing in the way of a vote on the union representing employees does not
constitute an effective waiver of the Union’s ability to contest an untimely
petition.

Id. at
163-64.  The extent of the Board’s decision there was to address
the contract-bar doctrine and then explain that the petitioners incorrectly
stated that negotiations were complete and misconstrued the effect of the union
president’s statement.  Nowhere did the Board explain a legal standard for
“sufficient justification” or address the underlying merits of why the
petitioners sought decertification in the first place.  Although the Board
concluded that the petitioners failed to provide “sufficient justification”
rather than “no justification,” the precise use of the language does not change
the nature of the decision.  The Board in City of Montpelier Public
Works Employees conducted the same analysis as did the Board here.

¶ 14.         The
Board ruled here that NEPBA was required to provide a timing-related
justification specifically addressing why it did not file its petition in the
open period in 2013 and found that NEPBA failed to do so.  We do not read City
of Montpelier Public Works Employees as inconsistent with that
analysis.  NEPBA never explained why it was unable to file during the open
period, and, although NEPBA argues that VSEA and the State simply assume “that
only facts which bear on a petitioner’s ability or inability to file during the
initial ‘open’ period are ‘cognizable,’ ” we find no precedent
inconsistent with that rationale.  In this Court, NEPBA reiterates many of
the arguments offered in its motion for waiver: that the officers’ interests do
not align with those of the Non-Management Unit; that the officers lack
effective voting power; and that ratification of the contract will foreclose
the officers’ ability to freely select representation.  These arguments
may support the creation of a new bargaining unit but do not justify untimely
filing because they do not explain why NEBPA was unable to file its petition
during the open period. 

¶ 15.         Finally,
although the Board ruled on the basis that NEPBA did not provide any
justification for why the normal time period should we waived, it did, in its
consideration of whether to dismiss the petition in absence of a justification,
expound upon the principles of the contract-bar doctrine and why the doctrine
counsels against filing petitions after the open period and before the
expiration of the contract.  The Board addressed the objectives of
balancing the “competing interests of stabilizing the employer-union
relationship and free employee choice of representative” and allowing the
parties “to negotiate free from the threat of a challenge to the majority
status of the employee representative.”  Here, NEPBA is attempting to
upset the existing bargaining relationship on the eve of ratification of a new
contract.  It would be difficult to find a case where the failure to file
a petition for a representation change could be more untimely.

¶ 16.         In
light of our standard of review, we conclude that the Board exercised its
discretion in dismissing NEPBA’s petition.  The Board did not err in
finding that NEPBA provided no relevant justification for its untimely
filing.  Nor did the Board err in concluding that NEPBA’s untimely filing—after
the open period—threatened the objectives of the contract-bar doctrine. 
The burden was on NEPBA to provide justification, and the Board did not err in
concluding that it failed to meet that burden.

¶ 17.         Because
we hold that the Board exercised its discretion in concluding that NEPBA
provided no proper justification for waiving the normal time period, we do not
reach the merits of NEPBA’s justification.

Affirmed.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














[1]
 NEPBA has not challenged the validity of § 13.2 in this case.





[2] 
NEPBA cites several other Board decisions for the same point, none of which we
find applicable.