NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 67

No. 2016-027

| | |
|---|---|
| In re Petition of New England Police Benevolent Association | Supreme Court |
| | On Appeal from Labor Relations Board |
| | April Term, 2016 |

Gary F. Karnedy, Chair

Susan Edwards, West Pawlet, for Plaintiff-Appellant.

William H. Sorrell, Attorney General, and Benjamin D. Battles, Assistant Attorney General, Montpelier, for Defendant-Appellee State.

Alfred Gordon O'Connell of Pyle Rome Ehrenberg PC, Burlington, for Defendant-Appellee Vermont State Employees' Association.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **EATON, J.** This appeal involves the most recent of two petitions filed on behalf of sixty-nine sworn law enforcement officers of the Vermont Department of Fish & Wildlife, Vermont Department of Liquor Control, and Vermont Department of Motor Vehicles. Here, the New England Police Benevolent Association (NEPBA) filed a petition on August 14, 2015, seeking an election of collective bargaining representatives among the sworn officers, currently represented by the Vermont State Employees' Association (VSEA) as part of the Non-Management Bargaining Unit. NEPBA appeals an order of the Vermont Labor Relations Board dismissing the petition. We affirm.

¶ 2.    The first petition filed on behalf of the sworn officers was filed by VSEA in 2011 pursuant to § 13.2 of the Labor Relations Board, Rules of Practice.[1]  Vermont Labor Relations Board Rules of Practice § 13.2, http://vlrb.vermont.gov/rules_of_practice [https://perma.cc/4ZDN-T7YZ] [hereinafter V.L.R.B. Rules of Practice].  At the time of the 2011 petition, the sixty-seven sworn officers in the proposed unit were among the more than 4700 employees in the entire Non-Management Unit.  By their petition, VSEA sought to remove the sworn officers from the existing Non-Management Unit and organize them into an independent bargaining unit.

¶ 3.    In early 2012, following two days of hearings, the Board dismissed VSEA's petition.  The Board concluded that allowing the proposed bargaining unit was likely to result in over-fragmentation, which could adversely impact the effective representation of other employees and the efficient operation of the state government.  See In re Sworn Law Enforcement Officers, 32 V.L.R.B. at 16-18 (Jan. 20, 2012), http://vlrb.vermont.gov/sites/vlrb/files/Volume32/32VLRB1.pdf [https://perma.cc/R96C-T8AU].  The Board based its decision on three factors.  First, the Board reasoned that because the proposed unit represented one percent of the state employees eligible to be represented in collective bargaining, it would establish precedent that "would create the potential of setting into motion a significant expansion of bargaining units in state government and resulting complications of dealing with a multiplicity of units."  Id. at 17.  Second, the Board noted that

---

[1]  Section 13.2 provides:

> If a collective bargaining agreement is in effect which covers any or all of the employees to be covered by the petition, a petition shall normally be considered timely only if filed during the period 150 to 120 days prior to the date the General Assembly convenes in regular session for the year during which the collective bargaining agreement expires.

2

the sworn officers had failed to pursue many of the issues they wanted addressed in negotiations, and, regardless, complete satisfaction "is hardly to be expected in the give and take of the negotiation process." Id. at 19. Third, and finally, the Board concluded that because the sworn officers in the proposed unit were employed across three separate divisions, and because the creation of a new bargaining unit would require division directors to compete with other division directors to gain support from their department commissioners, the proposed unit would unduly complicate the negotiation process. Id. at 19-20. The VSEA did not appeal the Board's decision.

¶ 4. The second petition filed on behalf of the sworn officers, which is the subject of this appeal, was filed by NEPBA in 2015. Like the VSEA's petition, NEPBA sought to represent sworn officers of the Vermont Department of Fish & Wildlife, Vermont Department of Liquor Control, and Vermont Department of Motor Vehicles in a new bargaining unit. By 2014, the number of sworn officers seeking representation had risen from sixty-seven to sixty-nine.

¶ 5. On September 2, 2015, VSEA moved to dismiss the petition. The State agreed, and notified the Board by letter that the proposed bargaining unit would not be an appropriate unit. NEPBA opposed the motion, urging the Board to apply the standard governing motions filed under Rule 12(b)(6) of the Vermont Rules of Civil Procedure. In support of its position, NEPBA asserted that the facts had changed with respect to the situation involving the sworn officers since the Board's 2012 decision. Specifically, NEPBA noted that although the sworn officers did not have a representative on the Non-Management Unit negotiations team advocating for their interests in 2012, Officer Michael Davidson of the Department of Liquor Control was appointed to the negotiations team following the Board's dismissal. Despite this change, NEPBA argued that many of the issues and proposals important to the sworn officers were ignored because they were inapplicable to the majority of the employees represented by the Non-Management Unit. This included Officer Davidson's proposals for percentage pay steps to

3

be shortened so that law enforcement personnel could reach their top pay scale under the collective bargaining agreement, extra disability protection for injuries that occur on the highway, and enhancement of the personal leave time benefit for sworn law enforcement officers. None of these proposals were accepted by the Non-Management Unit. This also included a request that VSEA establish a labor management committee to address specific issues related to the sworn officers' common needs, which has not been established.

¶ 6. In its decision, dated October 16, 2015, the Board stated that it has not adopted Rule 12(b)(6) and does not rely on it in ruling on motions to dismiss, and instead considers whether there is reasonable cause to believe that a question of unit determination or representation exists that warrants a hearing to reconsider the appropriateness of the proposed bargaining unit. The Board explained that a showing of reasonable cause requires evidence from NEPBA that facts have changed since the Board's prior decision on the matter with respect to the sworn officers. Relying on this standard, the Board dismissed NEPBA's petition without a hearing, concluding that "NEPBA ha[d] not presented evidence that facts have changed providing reasonable cause to warrant holding a hearing before the Board to reconsider the appropriateness of the proposed bargaining unit." NEPBA moved to reconsider and the Board denied the motion. NEPBA appealed.

¶ 7. On appeal, NEPBA argues that the Board committed reversible error in dismissing its petition without a hearing. NEPBA raises two main arguments: First, NEPBA asserts that the Board erred in refusing to consider the motion to dismiss under the standard in Rule 12(b)(6) and established a burden inconsistent with its prior rulings. Second, NEPBA contends that the Board should have granted a hearing for three reasons: (1) the petition established evidence that facts had changed with respect to the proposed bargaining unit and thus warranted a hearing; (2) the Board's decision dismissing the petition without a hearing violated the sworn officers' right to due process; and (3) the Board's decision violates the Vermont

4

Administrative Procedure Act (VAPA), 3 V.S.A. § 809(a), and the Municipal Employee Relations Act (MERA) of Title 21, Chapter 22.

¶ 8.     This Court's "review of the Board's decision is highly deferential and is limited to evaluating whether the evidence supports the Board's factual findings, and whether those findings, taken as a whole, justify the conclusions of law." See In re NEPBA, 2015 VT 51, ¶ 6, ___ Vt. ___, 121 A.3d 669 (quotation omitted). We will uphold the Board's interpretation of its own regulations and the statutes it is charged with executing absent "compelling indication[s] of error." Id.

¶ 9.     We begin with NEPBA's assertion that the Board should have considered the motion to dismiss under the standard in Rule 12(b)(6). In determining whether a complaint can survive a motion to dismiss under Rule 12(b)(6), courts must take all factual allegations in the complaint as true and consider whether "it appears beyond a doubt that there exists no facts or circumstances that would entitle the plaintiff to relief." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1, 955 A.2d 1082 (quotation omitted). By their own terms, however, the Vermont Rules of Civil Procedure "govern the procedure in the Civil and Criminal Divisions of the Superior Court and in the Judicial Bureau in all suits of a civil nature." V.R.C.P. 1. We have held that "[Rule 1] outlines the scope of the Rules of Civil Procedure, and administrative hearings are not included within their purview." Int'l Ass'n of Firefighters Local No. 2287 v. City of Montpelier, 133 Vt. 175, 177, 332 A.2d 795, 796 (1975).

¶ 10.     Although the Board, which is not subject to the Rules of Civil Procedure, may choose to incorporate some, or all, of the rules—and indeed, it has done so—it has not specifically adopted Rule 12(b)(6). See id. at 177, 332 A.2d at 796 (applying general rule that Vermont Rules of Civil Procedure do not apply to administrative proceedings unless agency rules specifically so provide.). Neither has it relied on Rule 12(b)(6) in considering motions to dismiss. Rather, the Board applies the relevant statutory standard in the State Employees Labor

5

Relations Act, which gives the Board broad authority to investigate petitions for the election of a collective bargaining representative. 3 V.S.A. § 902(3). Under the Act, upon receipt of such a petition, the Board "shall investigate the petition [for unit representation]," and "if it finds reasonable cause to believe that a question of unit determination or representation exists," the Board shall schedule a hearing. 3 V.S.A. § 941(d)(1); see also V.L.R.B. Rules of Practice § 13.11 ("The Board shall cause any election petition to be investigated as provided by statute. If in the course of its investigation the Board determines that a question of unit determination exists, it shall schedule a hearing before the Board."). In "the absence of substantive evidence" that there exists a question of unit representation, the Board may dismiss the petition. Id. § 941(d)(2).

¶ 11. In considering NEPBA's petition, the Board was thus required to consider whether NEPBA demonstrated substantial evidence to find reasonable cause to believe that a question of unit representation exists. See Chauffeurs, Teamsters, Warehousemen and Helpers, Local 597 and Champlain Valley Union High Sch. Dist. No. 15 Bd. of Sch. Dirs., 7 V.L.R.B. at 3 (Jan. 19, 1984), http://vlrb.vermont.gov/sites/vlrb/files/AlchemyDecisions/ Volume%207/7%20VLRB%201.pdf [https://perma.cc/9AFK-LYZX] (dismissing petition for unit representation without hearing after failing to find "reasonable cause to believe that a question of unit determination exists" warranting a hearing). Having previously determined that the proposed unit was inappropriate, the Board sought evidence to support a finding that there was reasonable cause to believe that the relevant facts had changed as they pertained to the proposed unit. The Board considered the appointment of Officer Davidson to the Non-Management Unit negotiations team and found that despite this appointment, the sworn officers' requests remained unmet. Regardless of these considerations, the Board found that the facts had not changed enough to create a question of unit representation. Because it is within the Board's discretion to determine the units "most appropriate to best represent the interest of the

6

employees," 3 V.S.A. § 902(3), the Board acted within its discretion and expertise when concluding that NEPBA had failed to demonstrate reasonable cause to believe a question of unit determination existed.

¶ 12. We next turn to NEPBA's claim that the Board erred in granting VSEA's motion to dismiss without a hearing because the petition established evidence that the relevant facts had changed, and because dismissing the petition without a hearing violated the sworn officers' right to due process as well as VAPA and MERA.

¶ 13. NEPBA contends that the Board's decision in Teamsters entitles a petitioner to a hearing where they have submitted substantive evidence that facts have changed. We note, however, that the Board's decision in Teamsters did not guarantee a hearing where petitioners merely submitted substantive evidence. Rather, the Board required "substantive evidence facts [had] changed . . . for [the Board] to find reasonable cause to believe that a question of unit determination or representation exists warranting a hearing before the Board to reconsider the appropriateness of the unit." Teamsters, 7 V.L.R.B. at 3 (quotation marks omitted). This standard can also be found in the Labor Relations Act and the Board's Rules of Practice. See 3 V.S.A. § 941(d)(1) (requiring the Board to investigate petition and schedule hearing "if it finds reasonable cause to believe that a question of unit determination or representation exists"); V.L.R.B. Rules of Practice § 13.11 ("The Board shall cause any election petition to be investigated as provided by statute. If in the course of its investigation the Board determines that a question of unit determination or representation exists, it shall schedule a hearing"). Because the Board found that the proposed unit was inappropriate in 2012, the NEPBA was required to submit evidence that facts had changed sufficient for the Board to find reasonable cause to believe a question of unit representation existed warranting a hearing before the Board.

¶ 14. Considering the findings of fact, taken as a whole, we find that the Board's conclusion is justified. In its petition, NEPBA asserts four major changes in the intervening

7

years.  First, one of their members was appointed as a representative in the Non-Management Unit negotiations team to advocate for their interests, and several of his proposals were rejected or modified.  Second, members of the Non-Management Unit entered into a side letter agreement excluding some of the sworn officers from contractual provisions governing call-in, on call, standby, available status, and holidays.  Third, the VSEA rejected a request to establish a labor management committee to address specific issues related to the sworn officers' common needs.  Fourth, the Vermont House of Representatives passed a bill that would have created a law enforcement study committee to consider whether to consolidate law enforcement operations throughout the State.

¶ 15.  Accepting NEPBA's assertions as true, the Board ultimately determined "NEPA ha[d] not presented evidence that facts have changed providing reasonable cause to warrant holding a hearing before the Board to reconsider the appropriateness of the proposed bargaining unit."  The Board dismissed NEPBA's petition without a hearing.  Our review of the Board's own regulations and the statutes is deferential and will be upheld absent "compelling indications of error."  In re NEPBA, 2015 VT 51, ¶ 6.  We find no such error here.

¶ 16.  NEPBA also argues that the Board deprived the sworn officers' of procedural due process by dismissing the petition without a hearing.  42 U.S.C. § 1983 creates a cause of action for any person injured by a deprivation of rights secured by federal law.  To establish a claim for a violation of procedural due process rights, a party must first show that he or she was deprived of a constitutionally protected interest.  See Hegarty v. Addison Cnty. Humane Soc'y, 2004 VT 33, ¶ 15, 176 Vt. 405, 848 A.2d 1139.  We look only to the nature of the interest at stake, not its weight or importance to the plaintiff, in determining whether "the interest is within the Fourteenth Amendment's protection of liberty and property."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972).  The threshold question is whether the sworn officers have a constitutionally protected interest at stake.  See In re Great Waters of Am., Inc., 140 Vt. 105,

8

108, 435 A.2d 956, 958 (1981) ("Analysis of a claim of deprivation of property without due process of law commences with a determination of whether any right requiring constitutional protection in fact is involved."). To assert a valid claim of deprivation of due process, NEPBA "must show that they were deprived of a liberty or property interest within the protection of the Fourteenth Amendment." Ahern v. Mackey, 2007 VT 27, ¶ 11, 181 Vt. 599, 925 A.2d 1011 (mem.).

¶ 17.   NEPBA bases its procedural due process claims on the deprivations of the sworn officers' right to representation by the bargaining representation that represents their specific needs and concerns, a right they argue is guaranteed by statute under the Labor Relations Act, 3 V.S.A. § 901 et seq.  The Labor Relations Act grants employees the "right to self-organization; to form, join, or assist employee organizations; to bargain collectively through representation of their own choice, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection," as well as "the right to refrain from such activities."  3 V.S.A. § 903(a).  It also grants the Board the broad authority to "determine issues of unit determination, certification and representation," and to investigate petitions for a new bargaining unit.  Id. § 941(a), (d).  Included in that authority, the Act expressly grants the Board discretion to investigate and dismiss a petition in the absence of substantive evidence of reasonable cause to believe that a question of unit determination or representation exists.  Id.  The Act does not, however, include the right to a hearing.

¶ 18.   Under the Labor Relations Act, the sworn officers are entitled to seek representation by an alternate bargaining unit, and they are entitled to an investigation into that petition; they are not, however, entitled to a hearing unless the Board found reasonable cause to believe a question of representation existed.  This Court has recognized a protected interest where a party has a "legitimate claim of entitlement to a governmental benefit," but not where they have "a unilateral expectation" of such a right.  In re New Cingular Wireless PCS, LLC,

9

2012 VT 46, ¶ 13, 192 Vt. 20, 54 A.3d 141 (quotation omitted); cf. LaFlamme v. Essex Junction Sch. Dist., 170 Vt. 475, 484, 750 A.2d 993, 1000 (2000) (stating that mere unilateral hope of becoming elected village trustee does not rise to level of entitlement). The Board investigated NEPBA's petition and dismissed it under the framework established by the Labor Relations Act, specifically 3 V.S.A. § 941(d). NEPBA received the procedural due process to which it was entitled under the Act. Because NEPBA was not entitled to a hearing unless the Board found reasonable cause to believe a question of representation existed, NEPBA has failed to demonstrate how the Board's decision affected the sworn officers' procedural due process rights.

¶ 19. Finally, we turn to NEPBA's argument that the Board's decision violates VAPA, 3 V.S.A. § 809(a), and MERA. NEPBA mistakenly relies on these provisions, neither of which applies to the petition at issue in this appeal, which was filed under the Labor Relations Act.

¶ 20. The VAPA is not applicable to proceedings before the Labor Relations Board, except as provided in the statutes governing the Labor Relations Board. 3 V.S.A. § 1005 ("Laws of this State relating to administrative procedure including chapter 25 of this title are not applicable to the Labor Relations Board except as set forth in this chapter."). The VAPA is not referenced in 3 V.S.A. § 941(d).

¶ 21. We likewise find that the Board did not violate MERA by failing to perform an investigation.[2] The Labor Relations Act provides that the Board "shall investigate the petition," and will conduct a hearing "if it finds reasonable cause to believe that a question of unit determination or representation exists," or dismiss "based upon the absence of substantive evidence." 3 V.S.A. § 941(d). Although the Labor Relations Act does not specify exactly what

---

[2] NEPBA argues that because the Board cited Teamsters, 7 V.L.R.B. 1 in its decision granting the motion to dismiss, and because the Board in Teamsters stated that "[i]n determining whether the grant the [motion to dismiss] we look to the provisions of the Municipal Employee Relations Act," the Board must now apply MERA in determining whether to grant VSEA's motion to dismiss. We recognize that MERA does not apply to this petition, and consider that Act solely to respond to NEPBA's argument.

10

the Board must do as part of its investigation, the issue of unit representation falls within the Board's field of expertise and its practice is thus afforded substantial deference. See <u>Chauffeurs, Teamsters, Warehousemen, Helpers Union Local 597 v. Univ. of Vt.</u>, 167 Vt. 564, 565, 702 A.2d 75, 77 (1997). It is not for this Court to dictate the procedure for the Board's investigations unless the Board has "abrogate[d] its responsibility," in which case we will compel it to act. <u>Newport News Shipbuilding and Dry Dock Co. v. N.L.R.B.</u>, 633 F.2d 1079, 1082 (4th Cir. 1980). Because it is clear that the Board conducted an investigation, we will not disturb its findings.

<u>Affirmed</u>.

FOR THE COURT:

_____
Associate Justice

11