2005 VT 96

# United Academics, AAUP/AFT and Dawn Saunders v. University of Vermont and State Agricultural College

[889 A.2d 722]

No. 04-177

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Cook, D.J. (Ret.), Specially Assigned

Opinion Filed August 19, 2005
Motion for Reargument Denied September 22, 2005

*Richard T. Cassidy* and *Jennifer E. Nelson* of *Hoff Curtis*, Burlington, for Plaintiffs-Appellants.

*Joseph P. McConnell* of *Morgan, Brown & Joy, LLP*, Boston, Massachusetts, for Defendant-Appellee.

¶ 1. **Johnson, J.** Dawn Saunders and United Academics appeal from a Vermont Labor Relations Board order dismissing their grievance against the University of Vermont. Appellants contend that the Board erred: (1) by finding that the University appointed Dr. Saunders to a one-semester position as Lecturer in economics prior to the ratification of a new collective bargaining agreement; and (2) by failing to conclude

that the terms and conditions of the new agreement superseded Dr. Saunders's individual employment contract. We affirm.

¶ 2. The University first appointed Dr. Saunders to a part-time position as a Visiting Assistant Professor in the fall of 1995. Although she was not actually visiting from another institution, Dr. Saunders preferred this title and rank to that of Lecturer. The following year the University offered her a full-time contract, and she taught various economics courses as a Visiting Assistant Professor through the spring of 2003. During the 2000-01 school year, Dr. Saunders had discussions with the acting chair of the economics department about the possibility of taking a one-year research sabbatical. With the chair's encouragement, she submitted an application for sabbatical the following fall.

¶ 3. Upon review, the University administration determined that, as a Visiting Assistant Professor, Dr. Saunders was not eligible for a paid research sabbatical. She then filed a grievance with the University Grievance Committee. The Committee determined that the Officer's Handbook — which governed faculty appointments at the time — did not permit visiting professors to take sabbatical, but ultimately sustained Dr. Saunders's grievance because she relied on the department chair's advice to her detriment. The Committee recommended that the University grant Dr. Saunders paid leave for the spring 2003 semester, and Interim University President Edwin Colodny subsequently agreed with that recommendation.

¶ 4. In August 2002, the University sent Dr. Saunders a letter confirming her appointment for the upcoming school year. The letter advised Dr. Saunders that the Officer's Handbook limited visiting professorships to six years, informed her that this was her final year in the rank, and noted that her current appointment carried no expectation of reappointment the following year. The letter further acknowledged that the terms of the appointment might change as a result of ongoing collective bargaining negotiations between the school and United Academics. Dr. Saunders signed the letter and returned it with commentary suggesting that the six-year limit and her reappointment status might also change under a new collective bargaining agreement.

¶ 5. In early September 2002, Dr. Saunders completed an application for professional development leave in accordance with the Grievance Committee's recommendations. She asked to defer her leave to the following fall, however, as that time better served her research goals. Dr. Saunders's request dovetailed with the economics department's needs, and the new department chair tentatively approved the proposal. Final authority to approve the deferral rested with the Univer-

sity Provost, however, and he denied Dr. Saunders's application because she had no underlying employment contract for the fall of 2003. The Provost instructed her to promptly advise the University whether she still planned to take leave during the spring 2003 semester. United Academics immediately objected to the Provost's decision.

¶ 6. Shortly thereafter, the Dean of the College of Arts and Sciences sent a memorandum to the Provost proposing a solution to the problem. The Dean suggested that:

> Dr. Saunders be offered a contract for full-time employment during Fall 2003. This contract will specify that she will be immediately released from any teaching obligation during the Fall 2003 semester and instead be placed on a one-semester research leave. As is our custom, it will also specify that the contract implies no guarantee of future employment.

The Provost approved this proposal in a letter sent to both Dr. Saunders and the Dean on January 13, 2003. Although Dr. Saunders did not receive a formal letter of appointment for the fall 2003 semester, she acknowledged the approval of her appointment in a response letter sent to the Provost in March.

¶ 7. In the interim, the University and United Academics settled on a new collective bargaining agreement, which became effective on February 6, 2003. Article 14 of the agreement contains the following language regarding faculty appointments:

> At the conclusion of two years of consecutive service at the University as a bargaining unit lecturer, or as a visiting faculty member, or a combination of years thereof in such ranks, if the University in its discretion decides to reappoint the lecturer, the University will appoint the lecturer to a term contract of two years. Any further lecturer appointments shall also be for two years.

In the letter acknowledging her fall 2003 appointment, Dr. Saunders referred the Provost to Article 14, and advised him that she "expect[ed] to return to teaching in the Spring of 2004 as a continuing lecturer under the [collective bargaining agreement]." In response, the Provost informed Dr. Saunders that her appointment was for one semester only, and that any future employment was at the discretion of the economics department chair. The chair subsequently notified Dr. Saunders that she would not be offered reappointment after the fall semester.

¶ 8. United Academics filed a grievance with the department chair on Dr. Saunders's behalf alleging that: (1) the one-semester appointment violated Article 14 of the collective bargaining agreement; and (2) Dr. Saunders's deep involvement in the organization and administration of the faculty union influenced the chair's decision to terminate her employment. The University denied the grievance, and appellants brought the matter before the Vermont Labor Relations Board. The Board concluded that: (1) Article 14 did not apply because the University extended Dr. Saunders her one-semester appointment before the collective bargaining agreement became effective; and (2) the department chair's decision not to reappoint her was not the result of anti-union animus. This appeal followed.

¶ 9. Appellants contend that the Board erred: (1) by finding that Dr. Saunders's one-semester appointment preceded the ratification of the collective bargaining agreement; and (2) by failing to conclude that the terms of the agreement superseded Dr. Saunders's individual employment contract. We give the Board's decision substantial deference on appeal. *Milton Educ. & Support Ass'n v. Milton Bd. of Sch. Trs.*, 171 Vt. 64, 69, 759 A.2d 479, 483 (2000). Our review is limited to evaluating whether the evidence supports the Board's factual findings, and whether those findings, taken as a whole, justify the conclusions of law. *Id.*

■ ¶ 10. Appellants first contend that the Board erred in finding that Dr. Saunders received her one-semester appointment before the effective date of the new collective bargaining agreement. As the Board noted, the agreement expressly states that it "shall be effective from the date of ratification, February 6, 2003 and shall continue in full force and effect until midnight June 30, 2005." The Board concluded that Dr. Saunders's one-semester appointment occurred on January 13, 2003, when the Provost approved the Dean's proposal to defer Dr. Saunders's paid leave until the following fall. While appellants argued that the Provost's approval letter — sent to both the Dean and Dr. Saunders — was unlike the formal appointment letters the University typically sends out, the Board found that the letter "represented a creative solution to an unique situation," and concluded that "[t]he unique nature of the appointment explains why Professor Saunders did not receive the traditional letter of appointment." We discern no reversible error in the Board's findings on this issue.

■ ¶ 11. Appellants alternatively contend that, upon ratification, the terms of the collective bargaining agreement superseded those of Dr.

Saunders's individual employment contract.* Appellants rely primarily on the United States Supreme Court's decision in *J.I. Case Co. v. NLRB* for the proposition that the terms of a preexisting individual employment contract must yield in the face of more favorable terms negotiated in a collective bargaining agreement. 321 U.S. 332, 338 (1944). The University challenges appellants' characterization of *J.I. Case Co.*, but we need not resolve that dispute to decide this case. While we have recognized that "[t]he very purpose of a collective bargaining agreement is to supersede individual contracts with terms which reflect the strength and bargaining power and serve the welfare of the group," *Morton v. Essex Town School Dist.*, 140 Vt. 345, 350, 443 A.2d 447, 449 (1982) (per curiam) (mot. for reargument), we have not yet precluded an individual employee from negotiating an individual contract that provides benefits above and beyond the terms of a collective bargaining agreement. Indeed, there is no dispute that *J.I. Case Co.* addressed only individual contracts that "subtract from collective ones." *J.I. Case Co.*, 321 U.S. at 339. Thus, if Dr. Saunders's one-semester appointment conferred upon her a special benefit, then the collective bargaining agreement did not affect the terms of her individual contract.

¶ 12. The one-semester appointment at issue here came about as a result of Dr. Saunders's unusual request for sabbatical leave and the University's creative response to the issues that ensued. Although visiting professors are not typically eligible for sabbatical, the University granted Dr. Saunders one semester of paid leave after the Grievance Committee concluded that the former economics chair mistakenly encouraged her application. Dr. Saunders then asked to defer the leave until the following fall, when she had no underlying employment contract. To accommodate her request, the University crafted a special arrangement whereby she received a one-semester appointment with the understanding that she would immediately take the paid leave. Had the University not offered Dr. Saunders the special appointment,

---

* Appellants initially contend that the Board failed to reach this question, and urge us to remand the case for a determination of the issue. Because we conclude, as a matter of law, that a subsequent collective bargaining agreement has no effect on an individual contract — such as Dr. Saunders's — that confers a special benefit, a remand would serve no purpose here. That is, even if the Board were to apply *J.I. Case Co. v. NLRB*, 321 U.S. 332 (1944), in the manner appellants suggest, the agreement would not affect Dr. Saunders's appointment, which provides a benefit above and beyond the collective contract.

she would not have been eligible to continue as a visiting professor, and she would have enjoyed no expectation of reappointment in any rank for the fall of 2003. Further, the collective bargaining agreement treats even an ordinary sabbatical "as a privilege and ... not an automatic benefit," and here the University went out of its way to ensure that Dr. Saunders received paid leave to which she was not technically entitled. Under these circumstances, the special arrangement the University offered Dr. Saunders certainly qualifies as a benefit that would not extend to typical employees under the agreement. As such, the ratification of the collective bargaining agreement did not affect Dr. Saunders's one-semester appointment.

■ ¶ 13. Contrary to appellants' contentions, the Board did not err in finding that Dr. Saunders's one-semester appointment occurred before the effective date of the new collective bargaining agreement; and, because the appointment provided a special benefit, the agreement did not affect the terms of Dr. Saunders's individual contract. Accordingly, we affirm the Board's order dismissing appellants' grievance.

*Affirmed.*