*Knight v. Town of Bennington*, 179-6-18 Bncv (Cohen, J., Nov. 7, 2018)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Bennington Unit | CIVIL DIVISION<br>Docket No. 179-6-18 Bncv |

| | |
|---|---|
| Clay Knight,<br>　　　Plaintiff<br><br>　　　v.<br><br>Town of Bennington,<br>　　　Defendant | Decision on Appeal from<br>Small Claims Court |

This matter comes before the Court on appeal from Small Claims Court. It concerns the enforceability of an employment agreement between a police officer and the Bennington Police Department in light of a collective bargaining agreement between the Town of Bennington and a local union.

### THE FACTS

The facts of this case are undisputed and are summarized as follows. On December 12, 2014, Appellant Clay Knight executed an Employment Agreement with the Bennington Police Department in which he, upon consideration for receiving police training at the Vermont Police Academy, agreed to work for the Department as a police officer for 36 months following his February 1, 2015 date of hire. The Agreement provided that inability or refusal to comply with the above would bind Appellant into reimbursing "the cost paid in stipend / salary and benefits (employer's social security contribution and workman's compensation insurance) by the Bennington Police Department." The reimbursement would cover expenses incurred by the Department during the training period. Repayment would be pro-rated at 1/36 reduction per month of service. Appellant commenced work for the Department but resigned effective June 30, 2017. Between July 1, 2015 and June 30, 2017, the Town of Bennington had a Collective Bargaining Agreement (CBA) with a local union. As a town employee, Appellant fell within the compass of the CBA. Upon Appellant's resignation, the Chief of Police notified him that he was 7 months short of satisfying his 36-month obligation under the Employment Agreement, making him liable to the town in the amount of $3,831.15. The sum unpaid, the town filed suit in Small Claims Court on March 14, 2018.

### PROCEEDINGS IN SMALL CLAIMS COURT

On April 18, 2018, Appellant, represented by counsel, filed an Answer and a Counterclaim for attorney's fees. A merits hearing was held on May 14, 2018, during which Appellant advanced three arguments: 1) that the Employment Agreement was precluded by the CBA; 2) that the Employment Agreement was precluded by the "free and clear" provision of the Fair Labor Standards Act (FLSA); and 3) that even if the Employment Agreement were

enforceable, "there would still need to be credit back for the minimum wage, hours worked, and possibly overtime." Appellant also submitted a trial memorandum, contending that the Employment Agreement was in conflict with, and consequently made unenforceable by, the CBA; that his employment obligations and salary were based exclusively on the CBA; and that the CBA invalidated all previous agreements. Along with this memorandum, Appellant filed a 2005 U.S. Department of Labor opinion letter outlining employee rights to minimum wage and overtime pay when an employer seeks training cost recovery. The town subsequently filed a memorandum of its own, after which the Small Claims Court issued its Decision on the Merits and Judgment on June 1, 2018.

Relying on *In re Aleong*, 2014 VT 15, 196 Vt. 129, for the proposition that individual employment agreements are generally enforceable so long as they do not violate a CBA, the Small Claims Court held that the Employment Agreement did not conflict with the CBA and was thus enforceable. On the claimed violation of the FLSA, the Court held that there was no evidence before it to find such a violation. Appellant timely filed a Notice of Appeal, which brings the case before this Court under 12 V.S.A. § 5538 and V.R.S.C.P. 10. A hearing was held on August 2, 2018.

## DISCUSSION

Appellant makes two arguments on appeal. First, that the Small Claims Court erred in finding that the Employment Agreement does not conflict with the CBA. Second, that the Court erred in holding that there was no evidence to find that the town's recovery would violate the Fair Labor Standards Act if it is not reduced by minimum wage and overtime pay.

The purpose of Small Claims Court is to provide "a simple, informal and inexpensive procedure" for adjudicating certain civil actions where the amount in controversy is not great. *Cold Springs Farm Dev., Inc. v. Ball*, 163 Vt. 466, 469 (1995); 12 V.S.A. § 5531. An appeal from Small Claims Court is limited to questions of law. V.R.S.C.P. 10(d). "The appeal shall be heard and decided, based on the record made in the small claims procedure." 12 V.S.A. § 5538. Findings of fact will not be disturbed unless they are unsupported by the evidence, *Brandon v. Richmond*, 144 Vt. 496, 498 (1984), or clearly erroneous. *Bartley-Cruz v. McLeod*, 144 Vt. 263, 264 (1984); *Dondero v. Morrison*, No. 632-7-16 CNCV, 2016 WL 7322309, at *1 (Vt. Super. Ct. Oct. 19, 2016). Where possible, the Small Claims Court's findings must be construed to support the judgment. *Kopelman v. Schwag*, 145 Vt. 212, 213–14 (1984). The relative procedural informality of Small Claims Court does not authorize an appellate court to make its own substantive findings. *Id.* at 214; *Majestic Car Rental Group v. Cioffi*, No. 403-6-09RDCV, 2009 WL 6849859 (Vt. Super. Ct. Sep. 14, 2009).

The first issue is whether the Employment Agreement conflicts with the CBA. Two cases guide this Court's analysis of the subject. In *United Academics v. Univ. of Vermont*, 2005 VT 96, 179 Vt. 60, a university professor negotiated an individual employment contract with management before the execution of a CBA. *Id.* ¶¶ 6–7. The professor then argued that upon ratification, the terms of the CBA superseded those of her individual contract. *Id.* ¶ 9. The Court observed:

> While we have recognized that the very purpose of a collective bargaining agreement is to supersede individual contracts with terms which reflect the strength and bargaining power and serve the welfare of the group, we have not yet precluded an individual employee from negotiating an individual contract that provides benefits above and beyond the terms of a collective bargaining agreement.

*Id*. ¶ 11 (internal quotations, alterations, and citations omitted).  The Court held that the CBA did not affect the terms of the professor's individual contract because the individual agreement conferred upon her a special benefit to which she was not entitled under the CBA.  *Id*. ¶ 12.

In *In re Aleong*, 2014 VT 15, 196 Vt. 129, the issue concerned whether a memorandum of understanding (MOU) between a university and a faculty union formed part of the CBA or the independent settlement of a dispute.  *Id*. ¶ 31.  The Court held that a side agreement that conflicts with a CBA is unenforceable.  *Id*. ¶ 32.  It also clarified that "there are issues which arise in individual cases that may be resolved through a side agreement with an individual employee" and "[s]o long as these do not violate the terms of the CBA, they are generally enforceable even though they create individual contract rights outside of the CBA."  *Id*.  Additionally, the Court categorically rejected "the more general argument that any side agreement between the union and the University must be subject to the CBA just because the CBA governs most issues between these parties."  *Id*. ¶ 36.

As an additional consideration, federal law is in accord that a CBA can coexist with a separate agreement.  See. e.g., *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 339 (1944) ("We know of nothing to prevent the employee's, because he is an employee, making any contract provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice."); *Price v. Unite Here Local 25*, 883 F. Supp. 2d 146, 152 (D.D.C. 2012), *aff'd sub nom. Price v. Union Local 25*, No. 12-7089, 2013 WL 1267137 (D.C. Cir. 2013) ("Side letters mutually agreed to by the parties in a collective bargaining relationship may supplement the original collective bargaining agreement.").

Appellant first argues that his Employment Agreement conflicts with the CBA because the former "directly touches" on the express salary provisions of the latter.  Article XVII of the CBA establishes a multiple-step salary schedule for town employees.  It also specifically provides: "Police hired without full-time certification shall be placed at Step I.  Upon Academy Certification, an officer shall move to Step II.  At the end of the probationary (trial) period, the officer shall be placed at Step III."  Appellant submits that "[i]n effect, the Appellee is trying to add an entire extra term into the CBA—that trainee officers must refund a portion of their wages if they leave the [police department] within a certain time frame."

The argument is without merit.  The test established in *Aleong* is not "directly touches;" it is *conflict*.  See *In re Aleong*, 2014 VT 15, ¶ 32, 196 Vt. 129, 139 (holding that "[a] side agreement which conflicts with the CBA is unenforceable" and that side agreements are enforceable "[s]o long as these do not violate the terms of the CBA.").  Nothing in *Aleong* suggests that a CBA displaces all other agreements that "directly touch" a matter covered by the CBA.  Indeed, it would be illogical to read "conflict" so broadly given than all individual employment agreements are likely to "directly touch" some issue in an applicable CBA, such as

3

vacation, sick leave, benefits, or, as here, training and salary. Such a reading would also be inconsistent with the holding of *United Academics*—a case cited approvingly by the *Aleong* Court—that an employee may negotiate an "individual contract that provides benefits above and beyond the terms of a collective bargaining agreement." *United Academics v. Univ. of Vermont*, 2005 VT 96, ¶ 11, 179 Vt. 60, 64. Such an expansive reading, moreover, would make Vermont law inconsistent with federal law, which also allows for separate agreements beyond, but not inconsistent with, collective bargaining agreements. See, e.g., *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 339 (1944).

Here, the Employment Agreement does not conflict with the CBA because—as Appellant himself recognized at the trial hearing and in his trial memorandum—the CBA is "silent as to any kind of salary claw back as to the training." Appellee is correct in recognizing that Appellant contracted for an additional benefit beyond the CBA—training and certification from the Vermont Police Academy. The consideration for that benefit was service for 36 months or a prorated refund of salary and benefits for the training period. Nothing about this agreement conflicts with the terse salary provisions of the CBA, which simply place employees on salary "steps." The mere fact that the Employment Agreement "directly touches" a matter covered by the CBA (salary) does not alone put it in conflict with the CBA.

Appellant next argues that conflict exists because the CBA contains an "entire agreement" clause in Article XXVI, which provides, in pertinent part:

> This Agreement constitutes the complete and entire Agreement between the parties, and concludes collective bargaining between the parties for its term. This agreement supersedes and cancels all prior agreements whether written or oral, unless expressly stated in this Agreement.

Appellant seems to argue that this provision invalidates not only all other agreements between the town and the union, but also those between the town and individual employees. The argument is singularly unpersuasive. Merger clauses are ubiquitous in contract law and do not operate in the way Appellant suggests. They are "designed to avoid the confusion created when parties may have several agreements or contracts between them prior to completing a written agreement." *Hoeker v. Dep't of Soc. & Rehab. Servs.*, 171 Vt. 620, 621 (2000); see also Restatement (Second) of Contracts § 210 (1981) ("A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement."). The parties to the CBA are the town and the union. Thus, the merger clause operates to supersede and cancel all prior agreements between the town and the union. It says nothing about agreements between the town and individual employees. Moreover, the *Aleong* Court considered the presence of an analogous merger clause in the CBA at issue there and nevertheless held that the MOU was valid and separate from the CBA. See *In re Aleong*, 2014 VT 15, ¶ 40, 196 Vt. 129, 142. To accept Appellant's argument would be to hold that a merger clause in a CBA invalidates all prior individual agreements in harmony with the CBA or those that confer benefits beyond the CBA. As discussed, Vermont and federal law are to the contrary.

For the preceding reasons, the Small Claims Court correctly held that Appellant's Employment Agreement does not conflict with the CBA and is thus enforceable.

The second issue on appeal is whether the Small Claims Court erred in holding that there was no evidence to find that the town's recovery would violate the Fair Labor Standards Act if it is not reduced by minimum wage and overtime pay. During the small claim proceedings, Appellant relied exclusively on a 2005 U.S. Department of Labor opinion letter, which provides that under the facts that gave rise to the letter, a reimbursement paid by the officer that would result in payment of less than minimum wage or overtime requirements would violate the FLSA. However, by the letter's own terms, that conclusion is limited to the facts that gave rise to the letter. The letter provides:

> This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein.

Notably, that officer's reimbursement obligation arose from an Oklahoma statute, not an Employment Agreement. Other pertinent facts are unknown. Appellant simply relied on this document and made no attempt to explain how his specific circumstances compelled a similar result. Appellant submitted no evidence, then or now, of how his wages would be reduced below minimum wage or overtime pay. Put simply, Appellant did not prove a violation of the FLSA if the town's recovery is not reduced.

Because many small-claim litigants appear *pro se*, "the proceedings are to be as simple and untechnical as possible." *Ferris-Prabhu v. Dave & Son, Inc.*, 142 Vt. 479, 480 (1983). However, this does not excuse a party—especially one, as here, represented by counsel—from making complete legal arguments and introducing necessary evidence. It is not the trial court's responsibility to ask the questions litigants neglect to ask or to adduce facts to support litigants' legal theories. *Olde & Co. v. Boudreau*, 150 Vt. 321, 322 (1988). The record reveals that the proceedings were fair, and that Appellant was given a full opportunity to present his evidence. He neglected to do so. Accordingly, the Small Claims Court did not err in holding that there was no evidence to find a violation of the FLSA.

ORDER

The Small Claims Court's Decision on the Merits and Judgment are AFFIRMED.


Dated at Bennington, Vermont this 7th day of November 2018.


_____
William Cohen
Superior Court Judge

5