NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 17

No. 2019-021

| | |
|---|---|
| Town of Bennington | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Civil Division |
| | |
| Clay Knight | September Term, 2019 |

William D. Cohen, J.

John D. Stasny of Woolmington, Campbell, Bent & Stasny, P.C., Manchester Center, for
  Plaintiff-Appellee.

Matthew M. Shagam of Rich Cassidy Law, South Burlington, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Skoglund, J. (Ret.),
          Specially Assigned


¶ 1.    **ROBINSON, J.**   Defendant appeals a decision of the civil division affirming a small-claims award to the Town of Bennington for reimbursement of defendant's salary and benefits pursuant to a contract between defendant and the Town.  Defendant signed an "employment agreement" with the Bennington Police Department under which, in exchange for receiving full-time training, he agreed to repay the Town a portion of his salary if he was unable or unwilling to remain employed by the Town for three years.  The issue before this Court is whether this agreement conflicts with the collective bargaining agreement (CBA) that set defendant's rate of pay during training.  We conclude that the employment agreement conflicts with the CBA, and therefore reverse.

¶ 2.    The facts are largely undisputed.  The Bennington Police Department hired defendant to work as a full-time patrol officer starting February 1, 2015.  As a condition of his employment, the Town required him to sign an "[e]mployment agreement" promising to work for the department for three years in exchange for receiving full-time training at the Vermont Training Academy.  The agreement provided that if defendant was unable or refused to comply with the three-year commitment, he agreed to "reimburs[e] the cost paid in stipend/salary and benefits (employer's social security contribution and workman's compensation insurance) by the Bennington Police Department" during the training period, "pro-rated at 1/36 reduction per month of service."  Defendant left his position on June 30, 2017, with seven months left on his three-year term.  The department informed defendant by letter that he owed the department $3831.15 pursuant to the employment agreement.  That amount included $3296.93 in salary, $230.72 in retirement benefits, $252.21 in social-security and Medicare contributions, and $51.29 in life/disability insurance.

¶ 3.    The Town sued in small claims court to recover the reimbursement.  As a defense to the Town's claims, defendant argued that his repayment obligation contradicted the CBA between the Town and defendant's union, the American Federation of State, County, and Municipal Employees.  The CBA sets the rate of pay for police officers, including officers who have not yet completed training.  It states, "Police hired without full-time certification shall be placed at Step I.  Upon Academy Certification, an officer shall move to Step II.  At the end of the probationary (trial) period, the officer shall be placed at Step III."  The CBA is silent as to any form of reimbursement related to training or early termination. Defendant argued that the "salary clawback" provision in the employment agreement conflicted with the salary provisions in the CBA, and that the CBA's merger clause stating that it was "the complete and entire Agreement between the parties" invalidated the employment agreement.  Additionally, he argued that the employment agreement violated the "free and clear" provision of the Fair Labor Standards Act (FLSA), and that even if the agreement was enforceable, he would still be owed at least minimum

2

wage under the FLSA. The court concluded that the agreement was enforceable because it did not conflict with the CBA, and that there was no evidence on which the court could find a FLSA violation.

¶ 4. Defendant then appealed to the civil division of the superior court.* The superior court noted during the hearing that the Town had a legitimate reason to try to reduce its costs: "it's an expense to a small town to put someone though the academy . . . . The Town is going to pay the expense but they want to get—make sure they get some benefit from its expense . . . ." The court affirmed the decision of the small claims court. Defendant requested permission to appeal, reiterating the same arguments he made before the small claims and superior courts, and we accepted the appeal. See V.R.S.C.P. 10(e); V.R.A.P. 6(b).

¶ 5. This case presents a legal question, which we review without deference. "As the trial court is limited to the record from the small claims proceeding and may address only questions of law, we in turn review the small claims court decision [without deference]." Cheney v. City of Montpelier, 2011 VT 80, ¶ 7, 190 Vt. 574, 27 A.3d 359 (mem.).

¶ 6. We agree with defendant that the employment agreement conflicts with the CBA's salary terms and is therefore not an enforceable side agreement. This is true even if the employment agreement predated the present version of the CBA. Although the Town's desire to recoup the cost of training its employees may be reasonable, it may not do so by undercutting the salary provisions of the CBA. Because we reverse on this basis, we do not reach the issue of whether defendant's arguments under the FLSA were preserved, or the merits of that argument.

¶ 7. In the context of collective bargaining, side agreements or contracts that affect only one employee raise special issues. In re Aleong, 2014 VT 15, ¶ 32, 196 Vt. 129, 94 A.3d 1150. "The very purpose of a collective bargaining agreement is to supersede individual contracts with

---

* Before the superior court, the Town argued for the first time that the employment agreement predated the CBA, which defendant disputes. As discussed below, this fact is immaterial to our decision. See infra ¶¶ 11-13.

terms which reflect the strength and bargaining power and serve the welfare of the group." Morton v. Essex Town Sch. Dist., 140 Vt. 345, 350, 443 A.2d 447, 449 (1981) (motion for reargument) (citing J.I. Case Co. v. NLRB, 321 U.S. 332, 338 (1944)). Because of this, "[t]he practice and philosophy of collective bargaining looks with suspicion on [side agreements that confer] individual advantages." Aleong, 2014 VT 15, ¶ 32 (quoting J.I. Case Co., 321 U.S. at 338). Side agreements that affect only one employee "violate the general rule that union members receive similar rights and benefits under the CBA and cannot be singled out for better or worse treatment." Aleong, 2014 VT 15, ¶ 32.

¶ 8.    Nevertheless, we have recognized that "there are issues which arise in individual cases that may be resolved through a side agreement with an individual employee," and that these agreements are generally enforceable even though they create individual contract rights outside of the CBA as long as they "do not violate the terms of the CBA." Id.

¶ 9.    Here, the employment agreement signed by defendant conflicts directly with the salary provisions of the CBA. Under the CBA, as a trainee who had not yet received police certification, defendant was entitled to his Step I salary, which at the time was $22.31 per hour. The employment agreement required that he refund a prorated portion of that salary to the Town unless he remained in employment for three years. This payback requirement directly conflicts with the CBA, which unconditionally promised defendant a specified salary during his training period without any provision for repayment of the salary and benefits to the Town. The Town cannot promise defendant specified wages in the CBA, and then condition or retract those wages in a side agreement. See J.I. Case Co., 321 U.S. at 339 ("[T]he employer may not incidentally exact or obtain any diminution of his own obligation or any increase of those of employees in the matters covered by collective agreement.").

¶ 10.    We reject the Town's argument that this side agreement is enforceable because the CBA did not promise defendant free training and certification, and he is merely being asked to repay the costs of this benefit. We agree with the Town that the CBA does not obligate the Town

4

to pay the cost of training. This would be a very different case if the side agreement required the defendant to repay the Town's out-of-pocket costs for his tuition at the police academy, or other such incidental expenses; such a side agreement may not conflict with the CBA. But this side agreement required defendant to repay "the costs paid in [his own] stipend / salary and benefits"—costs directly addressed in the CBA. (Emphasis added.) The CBA may not have addressed the Town's obligation to pay tuition costs associated with defendant's training, but it clearly required the Town to pay his salary during his training.

¶ 11. We also reject the Town's argument that the employment agreement predates the CBA and confers a special benefit to defendant and is thus enforceable notwithstanding the CBA. See United Academics v. Univ. of Vt., 2005 VT 96, ¶ 11 n.*, 179 Vt. 60, 889 A.2d 722 ("[W]e conclude, as a matter of law, that a subsequent collective bargaining agreement has no effect on an individual contract . . . that confers a special benefit . . . ."). We do not need to resolve the factual dispute of which contract came first, because we hold that even if the employment agreement came first, it would have been superseded by ratification of the CBA.

¶ 12. The employment agreement does not confer a "unique appointment" or "special benefit" that could survive the ratification of a CBA, even if it predated the CBA. Aleong, 2014 VT 15, ¶¶ 33-34. In United Academics, we held that an agreement predating a CBA was enforceable where it arose from a professor's "unusual request for sabbatical leave and the University's creative response to the issues that ensued." 2005 VT 96, ¶ 12. Similarly, in Aleong, we recognized a special arrangement where a university had tailored a professor's employment contract to include one tenured position on a 0.8 full-time-equivalent basis, and one nontenured position on a 0.2 full-time-equivalent basis. 2014 VT 15, ¶¶ 3, 34. Both of these contracts provided a special benefit "neither contemplated nor governed by any version of the CBA." Id. ¶ 34. But defendant's situation—being hired before receiving police training—is typical for new police officers. His position was specifically contemplated by the CBA, which provides a pay rate for officers while in training. Moreover, defendant did not individually bargain for the terms of

the employment agreement, but instead was required to sign the agreement as a condition of employment. The employment agreement was not a "creative solution to a unique situation," see United Academics, 2005 VT 96, ¶ 10 (quotation omitted), but a sweeping solution to a common problem—exactly the type of problem that could be resolved through collective bargaining.

¶ 13. It is true that the employment agreement provided consideration to defendant, but consideration alone is not sufficient to confer a special benefit. The very purpose of collective bargaining is to supersede the terms of separate agreements, including those separate agreements that would otherwise be enforceable under contract law. Morton, 140 Vt. at 350, 443 A.2d at 449. It is also immaterial whether this was a pre-hire agreement: once defendant became subject to the CBA, this conflicting contract was unenforceable, regardless of whether he signed it before or after his date of hire.

¶ 14. While we hold that the employment agreement is unenforceable in light of the terms of the CBA, we do not suggest that its goals were unfair or unreasonable. Defense counsel recognized, and we agree, that the cost of training new officers is a "legitimate concern" for towns, and that the Town has an interest in "reducing its costs and reducing employee turnover." Nor do we suggest that any side agreement relating to training would be unenforceable: as noted above, although the CBA provides a salary rate for employees in training, it is otherwise silent as to the Town's obligations relative to an officer's training. However, under our law, the Town cannot address its legitimate concerns by requiring employees who have not yet been certified to sign a contract that conflicts with the express salary terms of the CBA.

Reversed. Judgment entered for defendant.

FOR THE COURT:

_____
Associate Justice

6